

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0560-18

### DONALD COUTHREN, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### BRAZOS COUNTY

RICHARDSON, J., delivered the opinion of the Court in which NEWELL, KEEL, WALKER, and SLAUGHTER, JJ., joined. KELLER, P.J., filed a dissenting opinion in which KEASLER, HERVEY, and YEARY, JJ., joined.

### <u>OPINION</u>

Appellant was convicted by a jury of the felony offense of driving while intoxicated.

The jury also found that, during the commission of the offense, Appellant used or exhibited

a deadly weapon: a motor vehicle. The court of appeals affirmed the jury's deadly weapon

finding. Appellant claims the court of appeals erred in upholding the deadly weapon finding absent evidence that he operated his vehicle in a reckless or dangerous manner. We agree.

**BACKGROUND**

Around 2:00 a.m. on June 16, 2012, Appellant was driving on the frontage road for Highway 6 near Tabor Road, just outside of Bryan, Texas, when Frank Elbrich stepped in front of his vehicle. Elbrich had been walking on the right side of Tabor Road after leaving a bar nearby.[1] Appellant's vehicle collided with Elbrich, and Elbrich's head hit the passenger side windshield. Appellant stopped, got out of his vehicle, saw that Elbrich was bloody and unconscious, and put Elbrich in his vehicle to take him to the hospital. Instead of going directly to the hospital, however, Appellant drove to a house located near downtown Bryan to exchange vehicles with his girlfriend.

While at this house, Appellant was involved in an altercation, and the police were called. According to officers, Appellant smelled of alcohol, had slurred speech, his eyes were glassy and bloodshot, and he was swaying as he moved. Officers also noticed Elbrich, who was bloody and incoherent, in the passenger seat of Appellant's vehicle and that the windshield of Appellant's vehicle was shattered. Appellant told officers that he had struck

---

[1] At trial, Elbrich testified that on the night of the collision, he had been drinking at a bar on Tabor Road until it closed. Elbrich had not driven to the bar because he had planned on drinking and already had two prior convictions for driving while intoxicated. Elbrich testified that after the bar closed, and he was asked to leave the premises, he began walking on the right side of Tabor Road. The last thing he remembers from the night of the collision was seeing the overpass of Highway 6 where it crosses over Tabor Road. Elbrich woke up in the hospital the next day with six broken ribs, a leg broken in two places, a possible concussion, and a possible neck injury.

Elbrich when Elbrich stepped in front of his vehicle. Appellant initially told officers that he had not had anything to drink that night, but later admitted to consuming two "Four Loko" alcoholic beverages. At trial, Appellant testified that he drank the Four Loko beverages between 2:00 p.m. and 5:00 p.m. the previous day. Appellant refused to perform field sobriety tests or to submit to a blood draw. Officers then arrested Appellant for driving while intoxicated.

Appellant was indicted and tried for felony driving while intoxicated. The State sought a deadly weapon finding. The jury found Appellant guilty of driving while intoxicated, and further found that Appellant used or exhibited a deadly weapon, a motor vehicle, during the commission of the offense. The jury assessed Appellant's punishment at six years imprisonment.

On appeal, Appellant argued that there was insufficient evidence to support the jury's deadly weapon finding. The Thirteenth Court of Appeals disagreed.[2] The court of appeals used a two-step approach to assess whether the evidence was sufficient: first, the court evaluated the manner in which Appellant used his vehicle during the felony; and second, the court considered whether, during the felony, the vehicle was capable of causing death or serious bodily injury. Only the first step of this approach, the "manner of use" evaluation, is at issue before this Court.

---

[2] Pursuant to a docket-equalization order issued by the Supreme Court of Texas, Appellant's direct appeal was transferred from the Tenth Court of Appeals to the Thirteenth Court of Appeals.

In reviewing the manner in which Appellant used his vehicle, the court of appeals stated:

> [Appellant] was driving after consuming two Four Loko beverages, which were determined to have a greater alcohol content than a twelve ounce can of beer. Although the speed in which [Appellant] was driving is unknown, he testified that he was traveling around thirty miles per hour on a lightly traveled highway access road. We do not know the manner in which [Appellant] was driving seconds before hitting Elbrich, if [Appellant] applied his brakes prior to the accident, or for certain, if there were other cars on the road. However, the record shows [Appellant] had been drinking by his own admission and the testimony of the two officers. [Appellant] was unable to avoid striking Elbrich at a decent rate of speed, since Elbrich's head broke the windshield upon impact.[3]

The court of appeals concluded that a rational fact-finder could infer from these facts that Appellant used his vehicle in a manner that was capable of causing death or serious bodily injury.[4]

Appellant takes issue with the above "manner of use" analysis. Appellant claims the court of appeals relied solely on the occurrence of a collision and Appellant's consumption of alcohol to uphold the jury's deadly weapon finding. Appellant argues that there must be evidence of dangerous or reckless operation to support a finding that a vehicle was used as a deadly weapon. We granted review to address this question.[5]

---

[3] *Couthren v. State*, No. 13-16-00543-CR, 2018 WL 2057244, at *5 (Tex. App.—Corpus Christi May 3, 2018) (mem. op., not designated for publication).

[4] *Id*.

[5] We granted review on the following ground: "The opinion of the court of appeals is in conflict with opinions of this Court holding there must be evidence of dangerous or reckless operation of a vehicle to support a finding it was used as a deadly weapon and the occurrence of a collision or

## LEGAL STANDARD

Section 49.04 of the Texas Penal Code prohibits a person from operating a motor vehicle in a public place while in a state of intoxication.[6] If the State can prove a defendant has been previously convicted two times of an offense related to operating a motor vehicle while intoxicated, the driving while intoxicated offense becomes a third-degree felony.[7] "In any felony offense in which it is 'shown' that the defendant 'used or exhibited [a] deadly weapon[,]' the trial court 'shall' enter a deadly weapon finding in the judgment."[8] Thus, Texas law authorizes a deadly weapon finding in felony driving while intoxicated cases.[9]

When assessing the sufficiency of the evidence, we review the record to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that Appellant's vehicle was used

---

consumption of alcohol do not establish those elements."

[6] TEX. PENAL CODE § 49.04(a).

[7] TEX. PENAL CODE § 49.09(b)(2); *Gibson v. State*, 995 S.W.2d 693, 695-96 (Tex. Crim. App. 1999). Appellant pled true to two prior DWI offenses, which were used to enhance the DWI underlying this petition to a third-degree felony.

[8] *Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017) (citing TEX. CODE CRIM. PROC. art. 42.12, § 3g(a)(2)). Appellant was tried in 2016, before the re-codification of Texas Code of Criminal Procedure Article 42.12 as the current Chapter 42A. *See* Acts 2015, 84th Leg., ch. 770, p. 2321, eff. Jan. 1, 2017. The 2017 re-codification repealed Article 42.12, but the legislature expressly declared that no substantive change in the law was intended. *Id*., §§ 3.01, 4.01, p. 2395; *see also* TEX. CODE CRIM. PROC. art. 42A.054(b)-(c).

[9] *Sierra v. State*, 280 S.W.3d 250, 254 (Tex. Crim. App. 2009) (citing *Mann v. State*, 58 S.W.3d 132, 132 (Tex. Crim. App. 2001)).

or exhibited as a deadly weapon.[10] By statute, a motor vehicle is not a deadly weapon *per se*, but can be found to be a deadly weapon *if it is used in a manner* that is capable of causing death or serious bodily injury.[11] This Court has expressly rejected the argument that all felony driving while intoxicated cases warrant an automatic or *per se* deadly weapon finding.[12] Rather, this Court has recognized that a deadly weapon finding in a driving while intoxicated case is "dependent upon specific testimony in the record about the manner of use."[13] When assessing a defendant's manner of driving, we examine whether a defendant's driving was reckless or dangerous.[14] This Court has also held that evidence of the driver's intoxication and the fact of a collision alone would not support a deadly weapon finding absent evidence

---

[10] *Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014) (citing *Cates v. State*, 102 S.W.3d 735, 738 (Tex. Crim. App. 2003)); *see Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct 2781, 61 L.Ed.2d 560 (1979).

[11] *See* TEX. PENAL CODE § 1.07(a)(17)(B) (emphasis added).

[12] *Brister*, 449 S.W.3d at 495. In *Brister*, the State advocated for a deadly weapon finding in all felony DWI cases. *Id*. This Court was not persuaded by "such an across-the-board holding," and our position does not change today. *Id*. It is within the purview of the legislature to determine what is a deadly weapon *per se. See* TEX. PENAL CODE § 1.07(a)(17)(A) (legislature's codification of a firearm as a deadly weapon). Therefore, argument that this rule should be changed to categorize motor vehicles as deadly weapons in all felony DWI cases should be directed to the legislature, not this Court.

[13] *Brister*, 449 S.W.3d at 494; *Pruett v. State*, 510 S.W.3d 925, 928 (Tex. Crim. App. 2017) (recognizing that this Court's jurisprudence in deadly weapon cases related to motor vehicles in DWI cases involve "fact intensive inquiries into the manner in which an intoxicated driver uses a vehicle, and the sustainability of a deadly-weapon finding often depends upon officers' testimony about the variabilities of traffic patterns and the impulses of drunk drivers").

[14] *Sierra*, 280 S.W.3d at 255 (citing *Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005); *Tyra v. State*, 897 S.W.2d 796, 799 (Tex. Crim. App. 1995); *Cates*, 102 S.W.3d at 738-39).

that the vehicle was driven in a deadly manner during the commission of the offense.[15] To support a deadly weapon finding, there must be evidence that the manner of driving was capable of causing death or serious bodily injury apart from the fact of a collision and the defendant's intoxication.[16]

## ANALYSIS

There is very little evidence about the manner in which Appellant used his motor vehicle during the commission of the offense of driving while intoxicated. As acknowledged by the court of appeals, "[w]e do not know the manner in which [Appellant] was driving seconds before hitting Elbrich, if [Appellant] applied his brakes prior to the accident, or for certain, if there were other cars on the road."[17] Our independent review of the record provides little additional insight into the manner in which Appellant operated his motor vehicle. The relevant record evidence is as follows:

---

[15] *Cates*, 102 S.W.3d at 738-39 (holding that evidence of a fatal collision, while relevant circumstantial evidence, was insufficient to support a deadly weapon finding absent evidence that the potentially intoxicated defendant used his vehicle in a deadly manner during the offense of failure to stop and render aid); *see Moore*, 520 S.W.3d at 912 (refuting the court of appeals' belief that the only evidence of how the defendant was driving was the accident itself by pointing to evidence of intoxication, speed, and failure to avoid a collision).

[16] *See Brister*, 449 S.W.3d at 495; *Cates*,102 S.W.3d at 739; *Sierra*, 280 S.W.3d at 256; *Erikson v. State*, No. 03-13-00241-CR, 2014 WL 4179426, at *2 (Tex. App.—Austin Aug. 21, 2014, no pet.) (not designated for publication) (holding that the intoxicated appellant operated his vehicle in a reckless or dangerous manner *when he took his eyes off the road to look at his cell phone* and collided with another vehicle) (emphasis added); *Pena v. State*, No. 07-15-00016-CR, 2015 WL 6444831, at *2-3 (Tex. App.—Amarillo Oct. 22, 2015, no pet.) (holding that the intoxicated appellant operated his motor vehicle in a reckless or dangerous manner when he *failed to control his speed*, rear-ended another vehicle, *and also ran over a curb*) (emphasis added).

[17] *Couthren*, 2018 WL 2057244, at *5.

- Appellant's admission to responding officers that he had consumed two Four Loko beverages.

- Appellant's testimony that he was driving approximately thirty miles per hour on a lightly traveled frontage road when Elbrich stepped in front of his vehicle. Appellant testified that he swerved to avoid Elbrich, but was unable to avoid a collision.

- Officer testimony that Appellant smelled strongly of alcohol, had bloodshot eyes, was slurring his speech, was swaying, and exhibited poor decision making in deciding to drive Elbrich to a house instead of calling 911 or taking him to a hospital.

- Officer testimony that, by putting Elbrich in his vehicle and not driving to a hospital or somewhere Elbrich could get help, Appellant used his vehicle in a way "that could have hurt Mr. Elbrich real bad or even result[ed] in his death."

- Officer testimony that Appellant's windshield was shattered with a spider web of broken glass. There was a large indentation in the windshield where it appeared Elbrich's head stuck the vehicle and the hood of the vehicle had minor damage.

- Officer testimony that it appeared Elbrich had "hit the vehicle pretty hard."

The State argues that, based on these facts, Appellant operated his vehicle in a reckless or dangerous manner during the commission of the offense both (1) before and at the time he hit Elbrich with his vehicle, and (2) after hitting Elbrich with his vehicle.

*Appellant's Manner of Driving Before and at the Time of Impact*

The State alleges that Appellant used his vehicle as a deadly weapon before and at the time of impact because Appellant "fail[ed] to control his vehicle" and "either applied his brakes too late ... or never applied his brakes at all" to avoid hitting Elbrich. The State argues these conclusions can be inferred from the underlying facts. Reasonable inferences, however,

must be supported by the evidence presented at trial.[18] Therefore, review of factual scenarios that have supported an inference that a defendant either failed to maintain control of his vehicle or failed to apply his brakes to avoid a collision is warranted.

In *Sierra v. State*, there was no direct eye-witness testimony that the defendant was driving his vehicle in a reckless or dangerous manner.[19] However, due to a thorough on-scene investigation, an officer was able to estimate that the defendant was traveling between highway and public roadway speeds at the time of impact and opined that a normal, undistracted driver in the defendant's position would have been able to stop and avoid the collision.[20] This Court concluded that under these facts, a jury could have reasonably found that the defendant was speeding and failed to maintain control of his vehicle.[21]

In *Moore v. State*, there was no testimony about the manner in which the defendant was driving before the collision, but the evidence showed that the defendant rear-ended a vehicle at a stoplight, causing that vehicle to rear-end and push the vehicle in front of it into

---

[18] *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (citations omitted) ("The jury is the sole judge of credibility and weight to be attached to the testimony of witnesses, and juries my draw multiple reasonable inferences from the facts so long at each is supported by the evidence presented at trial. The jury is not, however, allowed to draw conclusions based on speculation.").

[19] *Sierra*, 280 S.W.3d at 252.

[20] *Id*. at 252, 256. In *Sierra*, the officer opined that the defendant could have avoided the collision based on the defendant's account that he was 247 feet away from the other vehicle when he first saw it. *Id*. at 256. Based on this account, the officer testified that a normal, undistracted person, who was driving the thirty-five mile-per-hour speed limit, would have stopped seventy-one feet before the other vehicle. *Id*. Therefore, this Court concluded, the defendant could have avoided the collision, but failed to do so, even though he had ample opportunity to stop before hitting the car. *Id*.

[21] *Id*. at 256.

an intersection.[22] This Court stated that the manner of driving as reckless or dangerous could be inferred from more than the "unadorned fact" that the defendant rear-ended another vehicle.[23] Factors that led to this Court's holding that the defendant drove his vehicle in a reckless or dangerous manner included: (1) the defendant's intoxication; (2) evidence that the defendant was "going fast enough" when approaching a red light to cause a chain reaction of collisions; and (3) evidence that the defendant "evidently either failed to apply his brakes altogether, or applied them too late to avoid a substantial impact[.]"[24] This Court concluded that a rational fact-finder could infer from these circumstances that the defendant was using his vehicle in a manner that was capable of causing death or serious bodily injury.[25]

In this case, the only direct evidence of Appellant's manner of driving before and at the time of impact was Appellant's testimony that he was driving approximately thirty miles per hour on a lightly traveled frontage road and swerved to avoid Elbrich. Given Elbrich's inebriated state, there were no other witnesses to the offense. Additionally, officers did not go to the scene of the collision. In fact, based on our review of the record, the exact location

---

[22] *Moore*, 520 S.W.3d at 907-08.

[23] *Id.* at 912.

[24] *Id*. at 912-13.

[25] *Id*. at 913.

of the collision was never determined.[26] Officers did not attempt to locate evidence of brake marks, skid marks, road damage, or any other surrounding circumstance that could have demonstrated the manner in which Appellant was operating his vehicle. Not even the speed limit of the roadway where the collision allegedly occurred was introduced into evidence. Although an officer testified that it appeared Elbrich had "hit the vehicle pretty hard," this testimony does not support an inference that Appellant was speeding at the time of the collision or was otherwise operating his vehicle in a reckless or dangerous manner. There is no evidence that Appellant saw Elbrich and could have avoided the collision by braking earlier or by braking at all—the prosecutor even suggested this when, in reference to Appellant's inability to avoid the collision, he stated, "it could mean it was an accident that was unavoidable."

While a jury may infer reckless or dangerous driving from the evidence, such an inference based on these bare facts goes too far. This Court has stated that the determination of whether a vehicle was used as a deadly weapon in a driving while intoxicated case requires a "fact intensive inquir[y]" into the manner in which an intoxicated driver used his

---

[26] State's Exhibit 1 is a map showing the intersection of Highway 6 and Tabor Road. It appears that at trial, this map was marked with a yellow "X" to designate the location of the collision. However, there was conflicting testimony about the collision's actual location. One officer testified that he "believed" the accident to have happened at a "little bend" in the 1900 block of the northbound frontage road. Another officer testified that Appellant told her on the night of the collision that he hit Elbrich near Tabor Road and North Earl Rudder Freeway. Appellant, however, testified that he was heading south on the Highway 6 frontage road when the collision occurred.

vehicle.[27] The facts in *Sierra* and *Moore* supported an inference that the defendant was operating the vehicle in a reckless or dangerous manner. The facts here do not.

*Appellant's Manner of Driving After Impact*

The State also alleges that after the collision, Appellant operated his vehicle in a reckless and dangerous manner by preventing Elbrich from getting needed medical attention and by placing him in danger of serious bodily injury or death. The State supports this argument by analogizing Appellant's case to *Hill v. State*.[28] In *Hill*, this Court found that restraints, including chains, belts, and locks, were used as deadly weapons in the commission of the offense of injury to a child because the restraints were used in a manner so as to cause serious bodily injury by preventing the child from obtaining food.[29] This analogy lacks merit.

In the past, this Court has relied on evidence that a defendant's driving was reckless or dangerous before concluding that a vehicle was used in a manner capable of causing death or serious bodily injury.[30] Reckless or dangerous driving has been demonstrated by speeding, disregarding traffic signals, failing to maintain control of the vehicle, fishtailing, causing property damage with the vehicle, driving on the wrong side of the road, almost colliding

---

[27] *Pruett*, 510 S.W.3d at 928.

[28] 913 S.W.2d 581 (Tex. Crim. App. 1996).

[29] *Id*. at 582-84.

[30] *Sierra*, 280 S.W.3d at 255.

with another vehicle, and failing to yield to traffic.[31] After the collision, there is no evidence

that Appellant operated his vehicle in a manner that this Court has recognized as reckless or

dangerous.[32] Additionally, it is not reasonable to infer reckless or dangerous driving from an

officer's agreement with the State that, by not taking Elbrich directly to get help, Appellant

used his vehicle in a way "that could have hurt Mr. Elbrich real bad or even result[ed] in his

death." "[P]revent[ing] Elbrich from receiving needed medical attention" is not related to the

manner in which Appellant operated his vehicle. While Appellant's *decision* to not take

---

[31] *See Tyra*, 897 S.W.2d at 798 (upholding a deadly weapon finding where evidence showed the defendant was "too drunk to control his vehicle"); *Mann*, 58 S.W.2d at 132 (holding the defendant's vehicle was a deadly weapon when the defendant drove through a downtown area while intoxicated, nearly hit another vehicle head-on, and a collision was avoided only because the other driver took evasive action); *Drichas*, 175 S.W.3d at 798 (reversing and remanding the court of appeals' decision to delete a deadly weapon finding when the record established that the defendant recklessly pulled out of a parking lot, failed to yield to oncoming traffic, fishtailed while driving at a high rate of speed, drove on the wrong side of the road, disregarded traffic signals, drove erratically, and led officers on a fifteen-mile high-speed chase before abruptly turning into a construction zone, knocking down barricades as he went); *Sierra*, 280 S.W.3d at 256 (holding that the evidence was sufficient for a deadly weapon finding when a normal, undistracted driver in the defendant's position would have stopped before hitting the other vehicle and the defendant was estimated to be driving between public roadway and highway speeds at the time of impact, leading to an inference that the defendant was speeding and failed to maintain control of his vehicle); *Moore*, 520 S.W.3d at 912-13 (reversing the court of appeals' opinion that deleted the jury's deadly weapon finding where the defendant was driving fast enough, when approaching a red light, to cause a chain reaction of collisions and the defendant evidentially failed to apply his brakes altogether, or applied them too late, to avoid a substantial impact).

[32] We would like to note that Appellant did not operate his vehicle in a reckless or dangerous manner simply by driving with a damaged windshield. From our independent review of the record, an officer testified that it would be "somewhat reckless" and was "not the best idea" to drive a vehicle with the right half of the windshield shattered. However, this officer also testified that the driver-side windshield was "pretty clear" and a photo of Appellant's vehicle shows very little damage to the driver-side windshield. While it may not be the "best idea" to drive with a shattered windshield, absent evidence that this circumstance caused Appellant to drive recklessly or dangerously, we cannot conclude that simply because Appellant was driving with a shattered windshield, he was operating his vehicle in a manner that was capable of causing death or serious bodily injury.

Elbrich directly to the hospital may have been reckless, this does not demonstrate that Appellant *operated his vehicle in a manner* that this Court has recognized as reckless or dangerous.

## CONCLUSION

In this case, we lack "specific testimony in the record about the manner of use"[33] and the available evidence does not support a conclusion that Appellant was operating his vehicle in a reckless or dangerous manner. While we must defer to the jury's drawing of reasonable inferences that are supported by the facts,[34] here, there are no facts to support an inference that Appellant was operating his vehicle in a manner that was capable of causing death or serious bodily injury. The court of appeals erred in upholding the deadly weapon finding absent evidence that Appellant operated his vehicle in a reckless or dangerous manner. Therefore, we hold the evidence insufficient to establish beyond a reasonable doubt that Appellant's vehicle was used or exhibited as a deadly weapon during the offense of driving while intoxicated. We reverse only that part of the court of appeals' judgment which affirmed the deadly weapon finding and reform the trial court's judgment to delete it.

DELIVERED: April 17, 2019

PUBLISH

---

[33] *Brister*, 449 S.W.3d at 494.

[34] *Zuniga v. State*, 551 S.W.3d 729, 738 (Tex. Crim. App. 2018).