**Modify and affirm as modified; Opinion Filed December 4, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01204-CR

## CHRIS AUTHOR THOMAS, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F-1800014-V**

# MEMORANDUM OPINION

Before Justices Myers, Osborne, and Nowell
Opinion by Justice Nowell

A jury convicted Chris Author Thomas of evading arrest or detention with a motor vehicle and sentenced him to seventy-five years' confinement.[1] In two issues, appellant asserts the evidence is insufficient to show he used a motor vehicle as a deadly weapon and the trial court erred by precluding his counsel from asking the venire a proper commitment question. In a single cross issue, the State requests we modify the judgment to show the jury made an express determination that appellant used a deadly weapon, a motor vehicle. We modify the trial court's judgment and affirm as modified.

---

[1] The State also charged appellant with two counts of robbery, but a mistrial was declared in both of those cases after the jury was unable to reach a resolution.

## A. Sufficiency of Evidence to Show Deadly Weapon

In his first issue, appellant asserts the evidence is insufficient to show he drove a vehicle in a manner capable of causing death or serious bodily injury. Therefore, the evidence is insufficient to show he used a motor vehicle as a deadly weapon.

When assessing the sufficiency of the evidence, we review the record to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that the appellant used or exhibited the vehicle as a deadly weapon. *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019) (considering sufficiency of the evidence to show motor vehicle used or exhibited as a deadly weapon). "By statute, a motor vehicle is not a deadly weapon per se, but can be found to be a deadly weapon *if it is used in a manner* that is capable of causing death or serious bodily injury." *Id.* (citing TEX. PENAL CODE § 1.07(a)(17)(B)). When determining whether the evidence is sufficient to support a deadly weapon finding, we must "evaluate the manner in which the defendant used the motor vehicle during the felony" to determine whether it was reckless or dangerous and "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury," which involves determining if the manner of use created actual danger to others. *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005).

Testimony at trial showed appellant and two other men stole a truck from a man and woman on a date. The men brandished guns, forced the couple from the truck, and drove away with the truck. The woman reported the robbery to the police.

Responding to the call, Senior Corporal J. Dickson[2] with the Dallas Police Department located the truck at approximately 1:24 a.m., and began following it. He called "Air 1," the

---

[2] Officer Dickson's first name does not appear in the record.

department's helicopter, to monitor the truck from the air. While waiting for Air 1, Dickson, driving a patrol car, followed the truck on a residential street without turning on his lights or sirens. At approximately 1:30 a.m., with Air 1 positioned above the stolen truck, Dickson initiated a felony stop. Appellant continued driving and a high-speed chase ensued.[3]

Video footage from Dickson's dash camera shows that after Dickson activated his lights and sirens to initiate the felony stop, appellant began driving over 50 miles per hour in a residential neighborhood. Appellant also crossed a double line in the road, drove on the left side of the street, and disregarded traffic signals. At one point, although Dickson drove more than 60 miles per hour through the residential streets, he could not keep pace with appellant. Dickson testified that driving so fast in a residential neighborhood is dangerous and capable of causing serious bodily injury or death.

Dickson continued chasing appellant on to the highway where other cars were driving. Dickson testified the top speed registered by his marked patrol car was 119 miles per hour, but, at that time, "[appellant] was pulling away from me." Dickson did not know how fast appellant was driving, but explained both vehicles were "traveling at a high rate of speed," which was extremely dangerous. During most of the video from Dickson's dash camera, the truck driven by appellant cannot be seen; however, Air 1 is visible. The jury saw video footage of the car chase from Dickson's dash camera.

The State asked Dickson whether he considers a motor vehicle a deadly weapon, and he responded affirmatively. The State then asked whether a motor vehicle is capable of causing serious injury, bodily injury, or death, and he again replied affirmatively.

---

[3] Dickson testified that department policy restricts when officers may engage in car chases because such chases create dangerous situations. An aggravated robbery is a basis for engaging in a car chase because the assailant is considered "a danger to the public because they are willing to point a gun at somebody to take their property."

Dickson stopped chasing appellant when officers from the Dallas County Sheriff's Department took over the chase. When Deputy Jason Pitts of the Dallas County Sheriff's Department began chasing appellant, the truck was moving faster than 100 miles per hour and, once appellant realized an officer was behind him, appellant increased his speed. The jury saw a video recording of the chase made by the camera in Pitts's patrol car. The video shows appellant swerve to avoid hitting another vehicle driving on the same street, lose control of the truck, and hit a utility pole holding a power transformer and power lines. The video shows a burst of light, sparks flying, and live power lines falling to the ground. When Pitts approached the truck, appellant said: "my bad." Pitts's patrol car was wrecked, the lights were torn off, and the back window was shattered by the falling power lines. Pitts testified a motor vehicle may be a deadly weapon and is capable of causing serious bodily injury or death, including when the vehicle is driven at speeds in excess of 100 miles per hour.

The evidence shows that appellant drove at a high rate of speed through residential neighborhoods and disregarded multiple traffic signs. He also drove at a high rate of speed, over 119 miles per hour, on the highway with other cars on the road. While driving fast, appellant narrowly missed colliding with another vehicle in operation before losing control of the truck and hitting a utility pole holding live power lines, which then fell to the ground. According to testimony from officers involved in the chase, driving in this manner is dangerous. From this evidence, a rational trier of fact could have found beyond a reasonable doubt that appellant drove the motor vehicle in a reckless or dangerous manner capable of causing serious bodily injury or death to others. We overrule appellant's first issue.

## B. Modify Judgment to Show Deadly Weapon Finding

In its cross-issue, the State requests we modify the judgment to show the jury found appellant used a deadly weapon. A court has the power to modify a judgment to make the record

–4–

speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b). When a jury makes an affirmative deadly weapon finding, the trial court has a mandatory duty to enter a deadly weapon finding in the written judgment. *See Couthren*, 571 S.W.3d at 789.

In this case, the jury unanimously found beyond a reasonable doubt that appellant used or exhibited a deadly weapon, a motor vehicle. However, under the heading "Findings on Deadly Weapon," the judgment states "N/A." Because we have the necessary information, we modify the trial court's judgment by deleting "N/A" and replacing it with "YES, A MOTOR VEHICLE" under "Findings on Deadly Weapon."

### C. Voir Dire

In his second issue, appellant argues his attorney was prohibited from asking a proper commitment question during voir dire.[4] The State asserts appellant's trial counsel asked an improper commitment question and, therefore, the trial court did not abuse its discretion by sustaining its objection or, in the alternative, any error was harmless.

During voir dire, appellant's counsel asked the jury: "Even if the State hasn't proven that it was used in that manner and means, just because it's a vehicle in a chase, then you would determine it's a deadly weapon, correct? The State objected on the basis of "improper commitment and a misstatement of the law." The trial court sustained the objection and instructed the venire to disregard. Appellant's counsel then asked: "What I want to know is who has those opinions about a vehicle being used in a chase and believes that it's a deadly weapon?" Appellant's counsel and members of the venire proceeded to discuss this inquiry.

We need not address whether the trial court abused its discretion by sustaining the State's objection. Assuming, without deciding, the trial court erred by sustaining the objection to the

---

[4] Appellant concedes the question was a commitment question, but asserts it was a proper commitment question.

–5–

question, the record does not show the error was harmful. Nor does appellant argue in his brief that he was harmed.

If we determine a trial court erred by improperly limiting a defendant's voir dire, we generally consider it a non-constitutional error and conduct the harm analysis under rule 44.2(b). *See Easley v. State*, 424 S.W.3d 535, 542 (Tex. Crim. App. 2014). Under rule 44.2(b), any error that does not affect a substantial right must be disregarded. TEX. R. APP. P. 44.2(b). A substantial right is affected when "the error has a substantial and injurious effect or influence in determining the jury's verdict." *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001).

When conducting a harm analysis, we consider the whole record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case, the jury instructions, the State's theory and any defensive theories, closing arguments, voir dire, and whether the State emphasized the error. *Easley*, 424 S.W.3d at 542; *Rich*, 160 S.W.3d at 577.

After sustaining the State's objection, the trial court did not place any limitation on appellant's ability to investigate potential jurors' opinions about a vehicle being used as a deadly weapon. *See, e.g., Easley*, 424 S.W.3d at 542 (applying rule 44.2(b) and concluding no harm when counsel was denied his preferred method of discussing criminal burdens of proof but was not precluded from discussing and explaining the beyond-a-reasonable-doubt standard); *Lnuk-X v. State*, No. 05-15-00908-CR, 2016 WL 3017565, at *5 (Tex. App.—Dallas May 18, 2016, no pet.) (assessing harm where State objected to appellant's counsel's question during voir dire). Rather, appellant's counsel immediately rephrased his question and engaged in a lengthy dialogue with

members of the venire on the topic, which allowed counsel to obtain the information he sought with the original question. Additionally, the record shows the State presented ample evidence supporting the verdict. The couple whose truck was taken testified and identified appellant as the perpetrator, the officers testified about the high-speed car chase, and the jury saw videos from the officers' dash cameras.

Having reviewed and considered the entire record, we conclude any error by the trial court in sustaining the State's objection was non-constitutional and did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Rich*, 160 S.W.3d at 577. We overrule appellant's second issue.

**D. Conclusion**

We modify the trial court's judgment to add the deadly weapon finding. As modified, we affirm the trial court's judgment.

/Erin A. Nowell/
ERIN A. NOWELL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
181204F.U05

–7–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHRIS AUTHOR THOMAS, Appellant

No. 05-18-01204-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F-1800014-V.
Opinion delivered by Justice Nowell.
Justices Myers and Osborne participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

We **DELETE** the term "N/A" under the heading "<u>Findings on Deadly Weapon</u>."
We **ADD** the words "YES, A MOTOR VEHICLE" under the heading "<u>Findings on Deadly Weapon</u>."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 4th day of December, 2019.