# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00819-CR

---

**Norman Jeffery Watkins, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2017-301, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found appellant Norman Jeffery Watkins guilty of the offenses of driving while intoxicated (DWI) with two or more previous convictions for the same type of offense, *see* Tex. Penal Code §§ 49.04, .09(b), and aggravated assault with a deadly weapon, *id.* § 22.02(a)(2). The jury also made an affirmative deadly weapon finding as to the DWI offense. *Id.* § 1.07(a)(17)(B) (defining "deadly weapon" to mean "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"). Appellant's sole issue challenges the sufficiency of the evidence to support that his "motor vehicle was a deadly weapon." Because we conclude that the evidence was sufficient to support the jury's finding, we affirm the judgments of conviction.

## BACKGROUND[1]

On November 20, 2016, appellant drove his vehicle, a pick-up truck, into the rear-end of a Chevy Tahoe. The collision occurred after dark, the Tahoe was stopped at a red light at a busy intersection of multiple-lane roads, and the impact from the collision pushed the Tahoe through the intersection. Neither vehicle's airbags deployed, but the Tahoe was totaled from the collision. Although the driver and his wife declined to be transported to the hospital and drove the Tahoe away from the scene, they went to the hospital later that evening because of pain from the collision.

Based on their observations and investigation at the scene, the police arrested appellant for DWI. The State subsequently indicted appellant for the offenses of DWI with two or more previous convictions for the same type of offense, *see* Tex. Penal Code §§ 49.04, .09(b), and aggravated assault with a deadly weapon, *id.* § 22.02(a)(2).[2] The State also gave notice to appellant that it would seek an affirmative finding on the issue of the use of a deadly weapon, "to-wit: a motor vehicle that, in the manner of its use or intended use, was capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B).

The State's witnesses during the trial's guilt/innocence phase included the driver[3] and his wife who testified about the collision and their ensuing injuries and pain. The driver testified that he and his wife were stopped at the red light when he heard "the screeching sound when the brakes of a vehicle lock up and are out of control" and saw in the rearview mirror "a

---

[1] We limit our recitation to the facts that are necessary to advise the parties of the Court's decision and reasons for overruling appellant's sole issue. *See* Tex. R. App. P. 47.1, 47.4.

[2] The State indicted appellant for two counts of aggravated assault, but the State abandoned one of the counts without prejudice at the beginning of trial.

[3] The driver testified that he was a police officer but off-duty at the time of the collision.

pair of headlights heading towards [them] getting bigger and bigger and bigger very quickly," that appellant's vehicle struck the rear of the Tahoe and "shot [them] through the intersection," that "it was quite an impact," and that "[t]he only thing [he] really had time to do was take [his] foot off the brake."[4]  He further testified that before the impact from the collision, he was concerned that he "was going to get shot into incoming traffic" because "there were some vehicles waiting to cross," including a minivan;[5] that he did not see appellant swerve or attempt to take evasive action; and that appellant was traveling at a "fast" speed.  He answered "[a]bsolutely" when asked if appellant's vehicle was capable of causing serious bodily injury or death and testified that after the collision, his back began to "really hurt" and started to "spasm" and "throb" and that his pain was worse the next day.  He had "a whiplash or soft tissue injury" and was prescribed muscle relaxers and a low-dose painkiller.

The driver's wife testified that they were "the first ones to stop at the stoplight"; that "all of a sudden, [they heard] a screeching sound behind [them]"; that the impact was "hard"

---

[4]  The driver explained his reasons for taking his foot off the brake:

I don't want to lose control of the vehicle and I want to try to minimize the impact as much as possible.  So if you think about the forces involved in a car accident, that initial impact is pretty immense.  So by taking my foot off of the [brake], it allows me to do a couple of things.  One, it reduces that initial impact because I've got maybe one or two miles an hour momentum.

It also allows me to keep control of the vehicle because if you're locked up on your brakes and you get hit, then you stay locked up and you're going to have a hard time controlling your vehicle.  If I have a little bit of momentum going, I'm able to still control my vehicle hopefully.

And—and then that's what happened in this case is I never actually lost control of the vehicle.  I was actually able to just steer it off to—off to the side.  So it kept me from getting shot in the bar ditch, kept me from getting pushed into something I didn't want to, maintain some level of control with it, but it was quite an impact.

[5]  The driver testified that the gentleman that was driving the minivan "didn't go through the intersection when his light turned green" and that he was "sitting there with a wide-eyed look on his face."

3

and "loud"; that after the impact, they "just went flying through the intersection"; and that she was "very surprised" that there was not a second collision when they were moving through the intersection because they "were at a red light." She also testified that she had "some impact pain" for several days after the collision, "mainly down [her] spine area, the neck, and the shoulders."

The responding police officer who prepared the crash report testified that based on his investigation, he believed that appellant failed to control his truck's speed and crashed into the rear of the Tahoe and that alcohol or intoxication may have been a contributing factor. Another responding police officer testified that in her opinion, appellant was "reckless in his actions," including his speed, based on the distance between the truck and Tahoe after the collision occurred:

> So typically when we have a crash that pushes a vehicle that far, usually those crashes occur on the interstate where you're driving speeds of 70 plus. If you have ever seen a crash on the interstate passing by, you'll see one vehicle and then the vehicle they hit further up. That's because when the two vehicles collide, it pushes the front vehicle further down the road. So where this crash occurred, the speed limit was only 45. Had he been going the speed limit or a speed close to the speed limit, we wouldn't have expected that far of a distance between the two vehicles. They would have been much closer together.

She also answered "Yes" when asked if her opinion was based on her training and experience working crashes and testified that driving while intoxicated, failing to keep a proper lookout when driving which causes a rear-end collision, and failing to maintain proper control can be reckless actions. She explained that the Tahoe "was hit dead in the back, which means that there was no evasive action done on [appellant's] part."[6] She further testified that based on her

---

[6] She testified that "generally when you're about to crash, we all jerk our wheel with a reaction to try to avoid the other vehicle."

training and experience, a vehicle such as appellant's truck operated in the manner that it was by appellant was capable of causing death or bodily injury.

The State's exhibits included photographs of appellant's truck and the Tahoe at the scene where they came to rest after the collision and photographs depicting the damage to the front of appellant's truck and the rear of the Tahoe. The driver testified that appellant's truck "was wrecked" and about the damage to the Tahoe from the collision:

> Ultimately, we learned the frame was bent. It bent the frame underneath. The back bumper itself is turned down at a really strong angle. It knocked the passenger side brake light assembly out, bent the back door. The back door, you couldn't open it from the outside or the inside. It just really mangled the back end of [the Tahoe].

The jury found appellant guilty of both offenses and made an affirmative deadly weapon finding as to the DWI offense. The trial's punishment phase was to the bench. The trial court assessed forty-two years' confinement for both offenses to run concurrently and included an affirmative deadly weapon finding in both judgments. This appeal followed.

## ANALYSIS

*Standard of Review*

When reviewing the sufficiency of the evidence to support a conviction, we consider all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Brooks v. State*, 323 S.W.3d 893, 902 (Tex. Crim. App. 2010). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778–79 (Tex. Crim. App. 2007); *see*

5

Tex. Code Crim. Proc. art. 38.04 (stating that generally jury "is the exclusive judge of the facts proved, and of the weight to be given to the testimony"); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016). "Furthermore, the trier of fact may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs when drawing inferences from the evidence." *Acosta v. State*, 429 S.W.3d 621, 625 (Tex. Crim. App. 2014).

### *Deadly Weapon Finding*

"By statute, a motor vehicle is not a deadly weapon *per se*, but can be found to be a deadly weapon *if it is used in a manner* that is capable of causing death or serious bodily injury." *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019) (citing Tex. Penal Code § 1.07(a)(17)(B) (emphasis added)); *see also* Tex. Penal Code § 1.07(a)(46) (defining "serious bodily injury"). "[A] deadly weapon finding in a driving while intoxicated case is 'dependent upon specific testimony in the record about the manner of use.'" *Couthren*, 571 S.W.3d at 790 (quoting *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014)); *see Pruett v. State*, 510 S.W.3d 925, 928 (Tex. Crim. App. 2017) (observing that deadly weapon findings related to motor vehicle in DWI offense "involve fact-intensive inquiries into the manner in which an intoxicated driver uses a vehicle"). "When assessing a defendant's manner of driving, we examine whether a defendant's driving was reckless or dangerous." *Couthren*, 571 S.W.3d at 790 (citing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009)). "To support a deadly weapon finding, there must be evidence that the manner of driving was capable of causing death or serious bodily injury apart from the fact of a collision and the defendant's intoxication," *id.* (citing *Brister*, 449 S.W.3d at 495), but "a jury may infer reckless or dangerous

6

driving from the evidence," *id.* at 793; *see Moore v. State*, 520 S.W.3d 906, 912 (Tex. Crim. App. 2017).

Appellant argues that the evidence was insufficient to support that his "motor vehicle was a deadly weapon" because the evidence showed that "[he] applied brakes before the two car collision occurred" and "[t]here was no evidence concerning [his] driving pattern until [he] had already applied his brakes in an effort to avoid the collision." He argues that the evidence showed that he attempted to avoid the collision because his "vehicle's angle of direction shifted to the right where there was an open area to pass" and that "[his] vehicle did not swerve out of control either through sudden braking or oversteering." Appellant relies on the evidence that neither vehicle's air bags deployed, it was the rear passenger side's light fixture that was knocked out, "[n]o other vehicle was involved in the collision," and "[n]o one suffered an injury requiring immediate medical transport."

Appellant further argues that although "this case seems at first blush similar to that in *Moore v. State*," "there are several critical distinctions." Similar to the facts in this case, the defendant in *Moore*, while driving in an intoxicated state, rear-ended another vehicle that was stopped at a red light, causing injury to the driver and passenger but not serious bodily injury, and the trial court found that the defendant's vehicle "constituted a deadly weapon that he used in the course of committing felony DWI." 520 S.W.3d at 907. The Texas Court of Criminal Appeals reinstated the trial court's deadly weapon finding after the Fort Worth Court of Appeals had deleted it from the judgment on sufficiency grounds. *Id.* Appellant argues that the "critical distinctions" between the facts in this case and *Moore* are that (i) appellant's blood alcohol concentration level was lower than was the defendant's in that case; (ii) unlike the defendant in

that case, appellant braked and attempted to avoid the collision; and (iii) a third vehicle was not involved in the collision.

The evidence in this case, however, included that appellant was driving in an intoxicated state and too "fast," that he did not apply his brakes soon enough to avoid the collision, and that the impact from the collision pushed the Tahoe through a busy intersection with cross traffic. *See id.* (recognizing that "we know nothing of the manner of [defendant's] driving prior to causing the accident" or "precisely how fast [defendant] was driving his [vehicle] before he struck [another vehicle]" but citing evidence that "the collision occurred at 6:30 p.m. on a Monday at a red light on the service road to a highway" and that defendant "evidently either failed to apply his brakes altogether, or applied them too late to avoid a substantial impact—even as he approached an intersection with a red light and at least two cars idling in the lane in front of him" and inferring from evidence that defendant "was going fast enough that the impact caused a chain reaction of collisions that ultimately pushed the white SUV into the intersection, and at a time when cars in the intersecting roadway had the right-of-way").

The driver testified that the collision "shot [them] through the intersection," that "there were some vehicles waiting to cross," and that "it was quite an impact." The driver also testified that after the collision, appellant's truck "was wrecked," and the Tahoe was totaled; that he did not see appellant swerve or attempt to take evasive action prior to the collision; and that appellant was traveling at a "fast" speed; but that the driver was able to maintain control of the Tahoe by taking his foot off the brake. Based on this evidence, the jury reasonably could have inferred that there was actual danger that the Tahoe would be broadsided in the intersection resulting in serious injury or death, *see id.* (concluding that "rational fact-finder could readily find that there was an actual danger that the white SUV would be broadsided"), and that the

8

collision would have been much worse if not for the driver's actions to maintain control of the Tahoe by taking his foot off the brake before impact.

One of the responding officers also testified that in her opinion, appellant's speed was reckless based on the distance between where appellant's truck and the Tahoe came to rest after the collision. She testified that had appellant been driving the speed limit of 45 miles per hour, they would have expected where the vehicles came to rest after the collision to be closer together. And, although the driver and his wife did not require transport to the hospital from the scene, the State is not required to prove an actual injury to justify a deadly weapon finding but that the manner of the defendant's use of his vehicle was capable of causing death or serious bodily injury. *See id.* at 908–10; *see also* Tex. Penal Code § 1.07(a)(17)(B) (defining "deadly weapon" to mean "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury").

Viewing the evidence in the light most favorable to the deadly weapon finding, we conclude that it supports a reasonable inference or finding that defendant's manner of driving was reckless and dangerous and that the manner of his use of his vehicle was capable of causing death or serious bodily injury. *See Couthren*, 571 S.W.3d at 790; *Moore*, 520 S.W.3d at 911–13. Thus, we conclude that the evidence was sufficient to support the jury's affirmative deadly weapon finding.

## CONCLUSION

Because we conclude that the evidence was sufficient to support the jury's affirmative deadly weapon finding, we overrule appellant's issue and affirm the judgments of conviction.

9

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Triana, and Smith

Affirmed

Filed:   November 10, 2021

Do Not Publish