**Affirmed and Opinion Filed August 27, 2024**



**In The**

# Court of Appeals
# Fifth District of Texas at Dallas

**No. 05-23-00780-CR**

**TIARA KATHLEEN HACKNEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 59th Judicial District Court**
**Grayson County, Texas**
**Trial Court Cause No. 075467**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Pedersen, III, and Carlyle
Opinion by Justice Pedersen, III

The jury found appellant Tiara Kathleen Hackney guilty of driving while intoxicated; this was her third conviction for DWI. The jury also found that appellant used or exhibited a deadly weapon, i.e., a motor vehicle, during the commission of that offense. The trial court assessed her punishment at eight years' confinement in the Institutional Division of the Texas Department of Criminal Justice and a fine of $1500. In a single issue, appellant contends the evidence was insufficient to support the jury's deadly weapon finding. We affirm the trial court's judgment.

## Background[1]

On the evening of June 26, 2022, at approximately 9:30, appellant was driving her black Mazda SUV on Highway 82 in Grayson County. Undisputed evidence shows that her blood alcohol content was more than twice the legal limit at the time.

Two other persons on the highway at the time—one a driver, the other a passenger in a car driven by her son—called 911 to report appellant's dangerous driving. The calls were played for the jury, and both callers were unquestionably disturbed by the situation. Jennifer Windham described appellant's driving as "insane" and "erratic." At one point she said the driver "is going to kill somebody," and at another that the car was about to run off the road. Casey Monk described appellant's car "swerving everywhere," and then exclaimed "Oh my gosh, oh my gosh, they just wrecked!"

Both witnesses testified at trial. Windham, whose son was driving at the time, described their initial encounter with appellant's driving:

> Well, we were driving in the fast lane and all of a sudden, very quickly, a car came up in the slow lane beside us and passed us very quickly. And then right as they passed us, it looked like they were losing control of their vehicle because it started swerving. And I almost thought, like, it might turn over. It was just swerving back and forth and back and forth. And then it kind of gained back to where it looked like it was maybe in control, but then it slowed down, went forward, and back fast, back and forth, back and forth. It was just very out of control. And then it went across the lanes and almost hit the cement [divider].

---

[1] Appellant does not challenge the jury's DWI finding in any way. We limit our discussion of the facts and procedure in the case to those matters relevant to the deadly weapon issue.

Windham stated that the car had no taillights, and it was dark outside, so it was hard to tell if the driver was braking. She warned her son to stay back away from the car, and she testified that a number of cars were backed up on the highway as they also tried to keep away from appellant's car. But appellant's car "would go fast and then would go slow, then it would go fast and then go slow." She stated that whenever another driver got near appellant's car, it would swerve toward them. Windham described experiencing a "kind of a trapped feeling" because given appellant's erratic speed and steering, they could not pass her or move over and try to exit the highway. She testified she was "extremely" concerned for her safety at the time.

Monk testified that appellant's vehicle had no taillights and was "just swerving from side to side." Monk stated she was afraid appellant would cause a bad wreck because "she was just right to left, right to left, like just straight lines back and forth." Monk witnessed appellant drive "many times" across both lanes of the highway, from the right-side shoulder to the left-side median— "like all the way to the grass over here, all the way to the grass in the median."

Both Windham and Monk described seeing a truck enter the highway in front of them and approach appellant's car. Appellant pulled toward the right-side shoulder as the truck approached in the left lane, but when the truck driver attempted to pass appellant, she "swerved across and then swerved back" and hit the truck and

the trailer it was pulling. Then both vehicles "swerved and went over to the ditch or to the side of the road."

The truck driver, Walker Mayo, testified that he did not see appellant's car until he was quite close to it because it had no taillights. As he saw her, she pulled from the right lane to the shoulder, and he began to pass her in the left lane. He felt the impact of her car striking first his truck and then the trailer, and he related that "as soon as I got hit, I started swerving from pretty much ditch to ditch, and it took me quite a ways to get it back under control. And then I eventually was able to pull over on the side of the road." Mayo testified that "if somebody had been on the other side in that other lane—the left-hand lane—then I definitely would have hit them."

Neither Mayo nor appellant was seriously injured in the incident, but neither of their vehicles could be driven afterwards; both were towed away. The jury saw photographs of the damage to Mayo's truck as well as officers' videos of the vehicles at the scene of the accident.

The accident occurred in an area under the jurisdiction of the Highway Patrol, and Trooper Jack Hill directed the investigation. Hill gave his opinion on the cause of the accident, that appellant "operated the Mazda SUV under the influence of alcohol which caused her to fail to drive in a single lane and strike Mr. Mayo's truck and trailer." Hill testified that the nature of the accident indicated a public safety concern existed because:

–4–

given that we're—you're traveling at highway speeds, there are multiple motorists on the roadway, it's dark, and then when you have alcohol involved, it becomes a very—a very serious public safety risk.

Hill agreed that anytime there is a collision at highway speeds, there is a risk of injury or death. And when asked whether, in his opinion, this was a situation where there would have been a significant risk of death or serious bodily injury by the manner in which appellant was driving her vehicle, Hill answered "yes." Hill explained that appellant's high blood alcohol level[2] made her driving "very dangerous" because "[t]he higher the concentration of alcohol in a person's body, the slower their reactions, the worse their judgment is. It just makes their impairment that much worse." Hill opined that appellant placed the citizens of Grayson County "at risk of serious bodily injury or death given her level of intoxication and how she was observed driving." He agreed that when a motor vehicle is operated by an intoxicated person it can be deadly, that it was lucky that no one was injured or killed in this case, but that such a risk had existed.

On cross examination, Hill acknowledged that in his notes he had characterized the damage to the vehicles as "minor" and that his report nowhere stated that appellant's vehicle was a deadly weapon. At the close of the cross examination, defense counsel asked Hill: "But in your own opinion, in your own

---

[2] Appellant's blood alcohol content was .203 based on a blood draw almost two hours after the accident.

investigation, of all these document files and six hours of video, as a lead investigator it wasn't a deadly weapon?" Hill answered: "Correct."

On redirect, Hill confirmed that the 911 callers sounded distraught and concerned about someone's being involved in an accident, injured, or killed. He likewise confirmed that when an accident involves two vehicles but other vehicles are on the road, the risk is enhanced because other vehicles and people can become involved and injured. And, finally, he confirmed that once he files his report, the district attorney's office decides how the case will be charged, not him.

The jury found appellant guilty of DWI and made the special-issue finding that she had used or exhibited a deadly weapon. This appeal followed.

**Discussion**

In her single issue, appellant contends that the evidence was insufficient to show that she used or exhibited a deadly weapon in the course of committing the offense of DWI. We review this sufficiency challenge by examining the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt that appellant used or exhibited her motor vehicle as a deadly weapon. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In doing so, we must defer to the jury's responsibility "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (quoting *Jackson,* 443 U.S. at 318–19).

The Penal Code defines "deadly weapon" to mean:

(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or

(B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury.

TEX. PENAL CODE ANN. § 1.07(17). Thus, a motor vehicle can be a deadly weapon if the manner in which it is used is capable of causing death or serious bodily injury. *See id.* §1.07(17)(B). We employ a two-part test to determine whether an appellant's use of the vehicle while she was driving and intoxicated met that standard: "first, we evaluate the manner in which [appellant] used the motor vehicle during the felony; and second, we consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009).

Evidence that appellant was driving recklessly or dangerously is sufficient to satisfy the first prong of the *Sierra* test. *See id.* at 256. Before reaching such a conclusion, we must make a fact intensive inquiry into the manner in which appellant used her vehicle. *Couthren v. State*, 571 S.W.3d 786, 793 (Tex. Crim. App. 2019). The jury heard the following evidence concerning how appellant was driving while she was intoxicated:

- In her 911 call, Windham characterized appellant's driving as insane and erratic; she thought appellant was about to run off the road.

- At trial, Windham testified that appellant passed her at a high rate of speed and then appeared to lose control of the car: it swerved repeatedly back and forth across lanes, did not maintain a consistent speed, and appeared to her as

if it might turn over. And whenever another driver got near appellant's car, appellant would swerve into them.

- Monk's 911 call described appellant as swerving everywhere.

- At trial, Monk described watching appellant repeatedly driving back and forth across the lanes of traffic, from the shoulder to the median.

- Both witnesses testified that appellant pulled to the right-side shoulder when Mayo's truck was approaching her in the left lane and then she veered to the left and hit his truck and trailer.

These witnesses offered evidence of appellant's speeding, failure to maintain her lane or a consistent speed, and ultimate failure to maintain control of her vehicle. Viewing this evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that appellant drove recklessly and dangerously while she was intoxicated. *See Jackson*, 443 U.S. at 319; *Sierra*, 280 S.W.3d at 255.

*Sierra*'s second prong does not require the State to establish that appellant's use of her vehicle actually caused death or serious bodily injury; it had to prove only that the manner in which it was used was *capable of causing* death or serious bodily injury. *See Moore v. State*, 520 S.W.3d 906, 908 (Tex. Crim. App. 2017). We evaluate this capability based on the circumstances that existed at the time of the offense. *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). Texas cases have required evidence that others were actually endangered rather than "merely a hypothetical potential for danger if others had been present." *Moore*, 520 S.W.3d at 909 (quoting *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000)). A deadly

–8–

weapon finding is appropriate, therefore, when evidence shows an actual danger, "such as evidence that another motorist was on the highway at the same time and place as the defendant when the defendant drove in a dangerous manner." *Drichas*, 175 S.W.3d at 799. The jury heard the following evidence concerning the circumstances that existed at the time appellant was driving while intoxicated:

- In her 911 call, Windham expressed her belief that appellant was "going to kill someone."

- Hill testified that both 911 callers appeared to be distraught.

- At trial, Windham testified she experienced a "kind of a trapped feeling" while watching appellant because—given appellant's erratic speed and steering—they could not pass her or move over and try to exit the highway. She was "extremely" concerned for her safety at the time.

- Monk testified that as she followed appellant, she was afraid appellant would cause a bad wreck because of her erratic driving in "straight lines back and forth."

- Both Windham and Monk were on the highway close to the accident; they had kept back some distance from appellant because of her erratic driving.

- Mayo testified that it took him "quite a ways" to get his vehicle under control after appellant hit it; he testified that if another car had been in the left-hand lane as he swerved, he definitely would have hit them.

- Hill testified that it was lucky no one was seriously injured by appellant's driving but that the risk of such injury existed at that time.

These witnesses—Windham, Monk, and Mayo—were all on the highway at the same time and place as appellant when she was driving in a very dangerous manner. Viewing this evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt that the manner in which

–9–

appellant was using her vehicle made it capable of causing death or serious bodily injury. *See Jackson*, 443 U.S. at 319; *Sierra*, 280 S.W.3d at 255.

Appellant relies on Hill's testimony on cross examination, in which the trooper agreed that in his opinion, as the lead investigator in the case, appellant's car was not a deadly weapon. But the district attorney is the representative of the State who determines the legal charges an accused will face, not a trooper. More importantly, Hill testified to a number of facts and opinions that would support the deadly weapon finding: he stated that a very serious public safety risk is created by an intoxicated driver traveling at highway speeds, with multiple motorists on the roadway, when it is dark; he agreed based on his own experience investigating accidents that anytime there is a collision at highway speeds, there is a risk of injury or death; and when the prosecutor asked him whether, in his opinion, this was a situation where there would have been a significant risk of death or serious bodily injury by the manner in which appellant was driving her vehicle, Hill answered "yes." We must examine the evidence in the light most favorable to the verdict; it was the jury's responsibility to resolve conflicts in the testimony. *Hooper*, 214 S.W.3d at 13.

We conclude the evidence was sufficient to support the jury's deadly weapon finding in this case. We overrule appellant's single issue.

## Conclusion

We affirm the trial court's judgment.

230780f.u05
Do Not Publish
TEX. R. APP. P. 47

/Bill Pedersen, III//
BILL PEDERSEN, III
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

TIARA HACKNEY, Appellant

No. 05-23-00780-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 59th Judicial District Court, Grayson County, Texas
Trial Court Cause No. 075467.
Opinion delivered by Justice Pedersen, III. Justices Partida-Kipness and Carlyle participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 27th day of August, 2024.