**Affirm and Opinion Filed May 11, 2021**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-20-00543-CR**

**GLORIA ELENA MELTON, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the County Court at Law No. 2**
**Kaufman County, Texas**
**Trial Court Cause No. 17-80274-CC2-F**

## MEMORANDUM OPINION

Before Chief Justice Burns, Justice Myers, and Justice Partida-Kipness
Opinion by Justice Myers

Gloria Elena Melton appeals her conviction for felony driving while intoxicated. The trial court sentenced appellant to imprisonment for sixty years.[1] Appellant brings two issues on appeal contending (1) the trial court erred by determining appellant used or exhibited a deadly weapon, an automobile, during the offense, and (2) that she lacked effective assistance of counsel at trial. We affirm the trial court's judgment.

---

[1] The State also alleged for punishment enhancement that appellant had prior convictions for felony DWI and felony theft. Appellant pleaded true to these allegations. *See* TEX. PENAL CODE § 12.42(d).

# BACKGROUND

On December 6, 2017, shortly after 7:00 p.m., the 911 dispatchers for Kaufman County received calls about a car on eastbound Interstate 20 swerving into other lanes and driving only 10 to 45 miles per hour in an area with a 75 mile-per-hour speed limit. One of the callers stated that whoever was driving the vehicle was going to cause an accident on the interstate and that "someone's gonna die." Another caller said the vehicle "just like almost slammed right into me."

Paul Rose testified he was going eastbound on I-20 when he saw a vehicle in front of him "weaving from shoulder to shoulder all the way across the interstate." He called 911, and he stayed behind the vehicle tapping on his brakes to warn drivers behind him. He testified the vehicle was mostly driving 30 to 70 miles per hour, but it came to a stop two or three times, and he had to slam on his brakes to avoid hitting it. A couple of other cars had to swerve onto the shoulder. At one point, the vehicle exited the interstate onto the service road. Then, the vehicle got onto the entrance ramp for the interstate, stopped, and then backed down the entrance ramp going the wrong way. Rose testified he "was afraid somebody was going to get hurt or killed."

Deputy Sheriff Charles Carr testified that when he got behind the vehicle, it pulled over to the side of the road, almost hit the guardrail, returned to the main lanes of the interstate, and then pulled back onto the side of the road into the grass. The vehicle stopped, moved forward again, stopped again, moved forward again, and finally stopped. When Carr approached the vehicle, appellant was in the driver's

–2–

seat. There was an open 32-ounce beer can on the center console and "a gallon-size jug of some kind of alcohol between her and the driver's side door."[2] Appellant told Carr she was headed to Waco. Carr asked appellant to get out of the vehicle, and when she tried to, the vehicle moved forward because she did not have it in "Park." When appellant and Carr got the vehicle into Park and appellant got out of the vehicle, she could hardly stand. She said she was headed to Waco, which was in the wrong direction from where she was driving. Carr testified that with the traffic on I-20 that night, appellant's driving at speeds near 10 miles per hour and weaving from shoulder to shoulder was capable of causing an accident resulting in "injury or death." Carr asked the dispatcher to send a Department of Public Safety (DPS) trooper to assist with the DWI investigation.

DPS Trooper Alan Hale testified he performed the horizontal gaze nystagmus test on appellant, and he "observed six out of possible six clues." Appellant was not able to complete the other intoxication tests, which were the finger-count and ABC tests. Hale testified that on the finger-count test, appellant "was unable to touch her thumb to her ring finger on the first attempt. And then she gave up on it."[3] Hale determined that, in his opinion, appellant was intoxicated, and he arrested her. Hale

---

[2] Trooper Allen Hale testified that the can of beer was almost empty and that the bottle of alcohol was a bottle of 80-proof vodka that "looked like there was a couple or several swigs taken out of it." Hale searched appellant's car and found a receipt indicating the vodka had been purchased at 6:49 p.m. that evening.

[3] The video recording from Hale's squad car showed Hale asked appellant to recite the alphabet beginning with the letter "H" and ending with the letter "S." Appellant said she was a teacher and familiar with the alphabet, but she appeared not to understand the instructions, and she did not perform this test.

testified that stopping in the traffic lanes on I-20, traveling from shoulder to shoulder of the interstate, and going the wrong way down an entrance ramp with the traffic he observed on the interstate that evening could cause an accident and "result in serious bodily injury or death."

The video from Hale's squad car showed the eastbound interstate highway was two lanes wide and the traffic was passing at high speed, sometimes at a rate of two or three cars per second, and sometimes with a few seconds between cars.

DPS Sergeant Audry O'Leary testified she was riding with Hale when they went to the scene. O'Leary testified that appellant was intoxicated due to the introduction of alcohol into her body. O'Leary testified that a driver weaving from shoulder to shoulder in the traffic conditions shown on the video of the stop could cause a crash resulting in "serious bodily injury or death."

A judge issued a warrant authorizing seizure of samples of appellant's blood. The samples of appellant's blood were taken at 10:25 p.m., about three hours after appellant stopped driving. A sample was tested and found to have an alcohol concentration of 0.371 grams of alcohol per 100 milliliters of blood. *See* PEN. § 49.01(2)(B) ("'Intoxicated' means: . . . (B) having an alcohol concentration of 0.08 or more.").

Appellant pleaded "no contest" to the charge of DWI. She testified she had no memory of the events leading up to her arrest. She did not remember buying

alcohol or being stopped by the police. She testified she has a seizure disorder. She admitted having seven prior DWI convictions.

## DEADLY WEAPON

In her first issue, appellant contends the State failed to present sufficient evidence to support the trial court's finding that appellant used or exhibited a deadly weapon, to wit, an automobile, in the commission of the offense.

When assessing the sufficiency of the evidence, we review the record to determine whether, after viewing the evidence in the light most favorable to the verdict, any rational trier of fact could have found beyond a reasonable doubt that appellant's vehicle was used or exhibited as a deadly weapon. *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019). An automobile is not a statutory deadly weapon per se, but the trier of fact can find it was a deadly weapon if it was used in a manner that was capable of causing death or serious bodily injury. *Id.*; *see* TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (defining "deadly weapon"). Whether a deadly weapon finding in a driving-while-intoxicated case is appropriate is "dependent upon specific testimony in the record about the manner of use." *Couthren*, 571 S.W.3d at 790 (quoting *Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014)). "To support a deadly weapon finding, there must be evidence that the manner of driving was capable of causing death or serious bodily injury apart from the fact of a collision and the defendant's intoxication." *Id.*

–5–

The evidence in this case shows appellant was driving mostly between 10 and 45 miles per hour on an interstate highway with a 75-mile-per-hour speed limit. She was driving erratically, crossing lanes and moving from the left shoulder to the right shoulder and back again. Although no collisions occurred, other vehicles on the road had to take evasive maneuvers to avoid hitting appellant. Rose testified appellant came to a complete stop on the interstate at least twice and that he had to slam on his brakes to avoid a collision. Rose stated in his call to the 911 dispatcher that appellant was "all over the road" and almost hit an 18-wheeler. Another caller to 911 said, "He's going to cause a wreck. . . . Someone's gonna die." A third caller said appellant "almost slammed right into me." Rose testified he was afraid someone was going to get hurt or killed. The law-enforcement witnesses testified appellant's driving, as described by Rose and the other 911 callers, was capable of causing death or serious bodily injury. From the video exhibits, the trial court could see the amount of traffic on the roadway and determine whether appellant's driving as described by the witnesses was capable of causing death or serious bodily injury. That evidence supports the trial court's finding that appellant's automobile was a deadly weapon.

Appellant argues the evidence showed her driving was not capable of causing death or serious bodily injury because all the other vehicles managed to avoid collisions. Appellant states, "Functionally, said testimony demonstrate[s] that Appellant was able to operate her vehicle in such a way as to avoid contact with other drivers on the roadway." We disagree—that evidence shows the other drivers

–6–

were able to operate their vehicles so as to avoid contact with appellant; it is not necessarily evidence that appellant was able to avoid the other drivers. Moreover, the test is not whether a collision occurred. "[T]he statute itself does not require pursuing police officers or other motorists to be in a zone of danger, take evasive action, or require appellant to intentionally strike another vehicle to justify a deadly weapon finding." *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). Instead, the test is whether the evidence showed that appellant's manner of driving was capable of causing death or serious bodily injury apart from any collision and appellant's intoxication. *Couthren*, 571 S.W.3d at 790. The witnesses and the callers to 911 describing appellant's driving presented evidence that her driving was capable of causing death or serious bodily injury.

Appellant asserts that no testimony "showed how this type of use or operation of a motor vehicle would be more dangerous than any other driving struggling with a flat tire, mechanical failure of the vehicle, or some other type of visual or personal impairment." The State had no burden to establish that appellant's driving was more dangerous than those situations, which, depending on the circumstances could also be capable of causing death or serious bodily injury.

Appellant points to the fact that appellant pulled off to the side of the road, that Carr did not testify he was endangered by appellant's use or intended use of her vehicle, and that Carr testified that any intoxicated person on the road is deadly. Because appellant was already pulling over to the side of the road, and, eventually

–7–

stopped, Carr was not an eyewitness to appellant using her vehicle as a deadly weapon. Appellant is correct that Carr's testimony that any intoxicated driver is deadly is not evidence supporting a deadly weapon finding because the deadly weapon finding must be based on evidence "*apart from* the fact of . . . the defendant's intoxication." *Couthren*, 571 S.W.3d at 790 (emphasis added). Other evidence, however, including Rose's testimony and the 911 calls, described appellant's dangerous driving.

Appellant states that no evidence showed slow driving was capable of causing death or serious bodily injury. We disagree. The prosecutor asked Carr whether driving at speeds near 10 miles per hour on Interstate 20 was "capable of causing an accident"; Carr answered, "It can be fatal." The prosecutor asked Hale and O'Leary whether stopping in the middle of I-20 in the traffic shown on the video exhibits would be capable of causing an accident resulting in death or serious bodily injury, and they testified that it was.

Moreover, appellant was not just driving slowly. She was also driving at an unsteady speed, sometimes stopping entirely, while being unable to stay in a single lane of traffic. Rose testified that a couple of cars pulled onto the shoulder to avoid appellant. The relevant issue before the trial court was whether appellant's driving overall, not merely one aspect of her driving, was capable of causing death or serious bodily injury. The prosecutor described to Carr, Hale, and O'Leary appellant's manner of driving as reported by Rose, who drove behind appellant, and by the other

911 callers, and Carr, Hale, and O'Leary testified that the manner of driving described by the prosecutor was capable of causing death or serious bodily injury.

We conclude the evidence was sufficient to support the trial court's finding that appellant used or exhibited a deadly weapon. We overrule appellant's first issue.

## INEFFECTIVE ASSISTANCE OF COUNSEL

In her second issue, appellant contends she did not receive effective assistance of counsel.

### Standard of Review

To prove a claim of ineffective assistance of counsel, appellant must show (1) his trial counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In reviewing counsel's performance, we look to the totality of the representation to determine the effectiveness of counsel, indulging a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance or trial strategy. *See Robertson v. State*, 187 S.W.3d 475, 482–83 (Tex. Crim. App. 2006).

Appellant has the burden of establishing both prongs by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998). "An

appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong." *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009); *see also Strickland*, 466 U.S. at 697. Generally, a silent record that provides no explanation for counsel's actions will not overcome the strong presumption of reasonable assistance. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). "It is a rare case in which the trial record will by itself be sufficient to demonstrate an ineffective-assistance claim." *Nava v. State*, 415 S.W.3d 289, 308 (Tex. Crim. App. 2013). In the rare case in which trial counsel's ineffectiveness is apparent from the record, an appellate court may address and dispose of the claim on direct appeal. *Lopez*, 343 S.W.3d at 143. However, "[i]f trial counsel has not been afforded the opportunity to explain the reasons for his conduct, we will not find him to be deficient unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Nava*, 415 S.W.3d at 308 (quoting *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012)). When, as in this case, the record on appeal is silent regarding counsel's actions, we may not speculate to find trial counsel ineffective. *See Thompson v. State*, 9 S.W.3d 808, 814 (Tex. Crim. App. 1999).

### Hearsay and Right of Confrontation

Appellant argues her counsel was ineffective for failing to object to hearsay evidence, the 911 calls. We disagree. Out-of-court statements that are present sense impressions or excited utterances are excepted from exclusion as hearsay. *See* TEX.

–10–

R. EVID. 803(1), (2). A statement is a present sense impression if it is "describing or explaining an event or condition, made while or immediately after the declarant perceived it." *Id.* 803(1). The recordings of the two callers who did not testify described their observations of appellant's driving immediately after observing it. Rose's 911 call described appellant's driving while he observed it. Therefore, all the calls were excepted from the hearsay exclusion rule by the exception for present sense impressions.

Also, hearsay statements are admissible as excited utterances when they "relat[e] to a startling event or condition, made while the declarant was under the stress of excitement that it caused." *Id.* 803(2). The trial court could determine that a vehicle traveling 30 to 50 miles per hour below the rest of the traffic while weaving back and forth across an interstate highway would be a startling event or condition, and the trial court could also determine that the three callers were under the stress of the excitement from the event when they talked to the 911 operator. Therefore, the calls were admissible as excited utterances. We conclude appellant has not shown her counsel was ineffective for failing to object to the 911 calls as hearsay.

Appellant argues that, except for Rose's 911 call, the recordings of the other 911 calls violated appellant's right of confrontation and that her counsel was ineffective for failing to object to the calls on confrontation grounds. "The Confrontation Clause of the Sixth Amendment guarantees that '[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses

–11–

against him.'" *Vinson v. State*, 252 S.W.3d 336, 338 (Tex. Crim. App. 2008) (quoting U.S. CONST. amend. VI). The Confrontation Clause prohibits the "admission of *testimonial statements* of a witness who did not appear at trial unless the witness was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Id.* (quoting *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). Thus, the question is whether the 911 calls were testimonial, which we determine de novo. *See Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006).

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

*Vinson*, 252 S.W.3d at 338 (quoting *Davis v. Washington*, 547 U.S. 813, 813–14 (2006)). In *Vinson*, the court of criminal appeals stated that in *Davis v. Washington*, the Supreme Court

> noted a non-exhaustive list of factors to consider when determining whether statements were made during on ongoing emergency: 1) whether the situation was still in progress; 2) whether the questions sought to determine what is presently happening as opposed to what has happened in the past; 3) whether the primary purpose of the interrogation was to render aid rather than to memorialize a possible crime; 4) whether the questioning was conducted in a separate room, away from the alleged attacker; and 5) whether the events were deliberately recounted in a step-by-step fashion.

*Id.* at 339 (citing *Davis*, 547 U.S. at 829–30)).

The two callers' statements were made during an ongoing emergency. The situation was still in progress, i.e., appellant was still driving erratically on the interstate. The 911 operators' questions asked the callers where their emergency was. The callers spontaneously described the situation. The operators did not ask about past events. The primary purpose of the questions was to determine the nature of the emergency and to determine a course of action to alleviate the emergency, which in this case was to dispatch law enforcement officers to the scene to assess the situation. The questioning was not conducted to memorialize a crime. The events were not recounted in a step-by-step fashion; instead, the callers' provided spontaneous descriptions of the situation. We conclude the recordings of the 911 calls were not testimonial and did not implicate appellant's right of confrontation. *See Neal v. State*, 186 S.W.3d 690, 694 (Tex. App.—Dallas 2006, no pet.). Therefore, appellant's counsel was not ineffective for failing to assert the evidence violated appellant's right of confrontation.

**Retrograde Extrapolation Testimony**

Appellant argues her counsel was ineffective for not objecting to the retrograde-extrapolation questions the prosecutor asked the forensic scientist who tested appellant's blood sample.

In this case, the forensic scientist testified that she could not say what the alcohol elimination rate was for a specific individual, "but I can give . . . an average for a regular average person." The prosecutor then asked how many drinks it would

take for a female weighing approximately 150 pounds to get to a blood-alcohol concentration of .371, and the witness answered, "Approximately 15, 16" standard drinks, meaning a 12-ounce beer, 5 ounces of "normal wine," or one to one-and-a-half ounces of distilled liquor. The prosecutor then asked if it was possible, based on elimination, that a person who was driving at 7:15 p.m. and who had blood drawn at 10:25 p.m. and did not consume alcohol in between could have had a higher alcohol concentration at the time of driving. The forensic scientist answered, "It's possible, yes."

On cross-examination by defense counsel, the forensic scientist testified, "The standard normal regular person eliminates about .02 per hour," so appellant likely "would have eliminated .05, .06." Defense counsel asked if that "would have put her at over .4," and the forensic scientist answered, "Yes, very likely."

Appellant asserts the evidence presented by the prosecutor was inadmissible because the State failed to show the forensic scientist was qualified as an expert on retrograde extrapolation or that her testimony on the subject was reliable. Appellant does not assert on appeal that defense counsel was ineffective for his questioning the witness about retrograde extrapolation on cross-examination.

In *Mata v. State*, 46 S.W.3d 902 (Tex. Crim. App. 2001), the supreme court discussed the admissibility of retrograde-extrapolation testimony. The court emphasized that an expert witness's testimony on this subject must be reliable. The witness must be able "to apply the science and explain it with clarity." *Id.* at 916.

–14–

The witness must also "demonstrate an awareness of the subtleties of the science and the risks inherent in any extrapolation." *Id.* The court, in determining whether the evidence was reliable, should consider: "(a) the length of time between the offense and the test(s) administered; (b) the number of tests given and the length of time between each test; and (c) whether, and if so, to what extent, any individual characteristics of the defendant were known to the expert in providing his extrapolation." *Id.*

Appellant argues, referring to the evidence elicited by the prosecutor, "The admission of such prejudicial and inadmissible evidence had no strategic value and only served to harm appellant." Appellant cites the case of *Blumenstetter v. State*, 135 S.W.3d 234 (Tex. App.—Texarkana 2004, no pet.), but she does not explain how the opinion applies to this case. In *Blumenstetter*, the defense counsel testified that he did not know about *Mata* before the trial and that his strategy was to argue that the expert witness was guessing and that no one really knew the defendant's level of intoxication. *Id.* at 247. Counsel said he thought if he had objected, then the State would have proved the witness's qualifications and solidified his testimony to the jury. *Id.* The court of appeals stated it was "highly unlikely" that the State could have proven the testimony was reliable. *Id.* The court of appeals concluded counsel's assistance fell below an objective standard of reasonableness because he did not object to the retrograde-extrapolation testimony. *Id.* at 247–48. However, the court concluded counsel's failure to object to the evidence did not affect the

outcome because that evidence was cumulative of evidence showing the defendant was intoxicated while driving. *Id.* at 250.

In this case, appellant's counsel did not testify. "Therefore, appellant has failed to rebut the presumption this was a reasonable decision." *Thompson*, 9 S.W.3d at 814. Furthermore, appellant does not explain how the exclusion of the retrograde-extrapolation testimony would probably have resulted in a different outcome. Appellant pleaded nolo contendere to driving while intoxicated, and she signed a stipulation of evidence admitting to being intoxicated. The laboratory test of her blood proved her alcohol concentration three hours after she stopped driving was over four-and-a-half times the legal limit. She failed or did not complete the intoxication tests Hale administered. Partially consumed open containers of alcohol were next to appellant in her vehicle. Appellant does not explain how testimony of appellant's alcohol concentration being higher than 0.371 affected the outcome of the case. We conclude appellant has failed to established the prejudice prong of the *Strickland* standard because appellant has not shown the result of the trial would probably have been different if appellant had objected to the retrograde-extrapolation testimony.

## Failure to Designate Expert Witness

Appellant also contends her counsel was ineffective for failing to provide the State with timely notice of an expert witness. On the second day of the trial, appellant called her employer, with whom she resided as his housekeeper, to testify

that appellant did not appear intoxicated in the videos. She also wanted this witness to explain and confirm her medical conditions to the trial court. The witness had a medical degree and had been a board-certified anesthesiologist with a subspecialty in pain management. However, his medical license had been revoked. The State objected on two grounds to the witness testifying as an expert: first, because he was not a proper medical expert due to the revocation of his license, and second, because appellant did not give notice that the witness would be testifying as an expert witness.

Appellant's attorney explained to the trial court that he did not learn the witness had a medical degree until the first day of the trial. The trial court overruled the State's objection that the witness was not a medical expert but sustained the objection to the failure to designate the witness as an expert witness.

The witness testified that appellant's mental state on the video recordings of the stop and arrest "did not seem consistent with somebody that had fatal alcohol levels." He stated appellant's "behavior was consistent with postictal syndrome from her seizure disorder" and that appellant's "last seizure was approximately ten years ago." The State objected that this testimony was expert testimony, not lay testimony. The trial court sustained the objection because "[a] lay person would have no knowledge of what you just testified to at all unless they went to medical school."

Appellant argues on appeal, "This was Appellant's only witness to support her theory that her impaired condition may have been the result of some other reason, other than just intoxication." Appellant does not explain how evidence that her condition may have been due to some reason other than intoxication would have affected the outcome of the case. Appellant pleaded nolo contendere to driving while intoxicated, and she stipulated that she was intoxicated. The laboratory evidence showed her alcohol concentration three hours after being stopped was more than four-and-a-half times the legal limit.

We conclude appellant has not overcome the presumption of reasonable assistance. Her counsel did not testify as to the strategic reasons, if any, he may have had for his actions, and we decline to speculate as to them. *See Thompson*, 9 S.W.3d at 814. We overrule appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/Lana Myers//
LANA MYERS
200543f.u05                                     JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

GLORIA ELENA MELTON,
Appellant

No. 05-20-00543-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Court at Law No. 2, Kaufman County, Texas
Trial Court Cause No. 17-80274-CC2-F.
Opinion delivered by Justice Myers. Chief Justice Burns and Justice Partida-Kipness participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of May, 2021.