

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-22-00345-CR

Steven Xzavier **MEDINA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2020CR4174
Honorable Michael E. Mery, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:     Patricia O. Alvarez, Justice
Irene Rios, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: May 22, 2024

AFFIRMED

Appellant Steven Xzavier Medina appeals the trial court's deadly weapon finding associated with his intoxication manslaughter conviction. *See* TEX. PENAL CODE ANN. §§ 1.07(17)(B), 49.08. We affirm the trial court's final judgment.

### BACKGROUND

After a night out and consuming multiple intoxicating substances, including amphetamines, methamphetamines, and marijuana, Medina drove several teenage girls around until they asked him to stop and let them out because of his erratic driving. While the girls exited

the car, Jessica Medina got caught in her seatbelt. Before she could untangle herself, Medina sped away with Jessica still entangled in her seatbelt. Medina dragged Jessica to her death.

In an open plea, Medina pled "no contest" to intoxication manslaughter in exchange for a maximum punishment of fifteen years: the trial court accepted Medina's plea. At the conclusion of the sentencing proceeding, the trial court followed the plea agreement and sentenced Medina to fifteen years in prison. The trial court also found that Medina used his car in a manner warranting a deadly weapon finding and included the deadly weapon finding on Medina's final judgment.

In four issues, Medina appeals the deadly weapon finding contending (1) the evidence was insufficient to support the finding, (2) the trial court violated Medina's due process rights by not allowing one of the investigating officers to provide his expert opinion at the punishment proceeding as to whether Medina used his car as a deadly weapon in the commission of the offense; (3) the trial court abused its discretion by excluding the investigating officer's expert opinion as to whether Medina used his car as a deadly weapon in the commission of the offense, and (4) the trial court violated Medina's due process rights by predetermining that Medina used his car as a deadly weapon prior to the sentencing proceeding and thereby, failed to consider the entire range of punishment when assessing Medina's punishment.

### SENTENCING PROCEEDING

At the onset of the sentencing proceeding, and prior to the admission of any other evidence pertaining to the incident, the trial court informed the parties that because Medina had stipulated to the facts regarding the manner in which he used his car in the commission of the offense, the trial court would be including a deadly weapon finding. The trial court then instructed counsel to limit the evidence at the punishment proceeding to new information not otherwise contained in the record.

Two of the girls that rode in Medina's car with Jessica testified. Both girls described Medina's erratic driving while they were in the car the night of the offense. One girl stated that Medina was driving "recklessly and hitting the medians" multiple times. The other girl also said Medina drove recklessly, and that he was "swerving and stuff" and hit a curb. As a result, the girls requested Medina stop and let them out of the car. One of the girls explained that while they were exiting the car, Jessica was the last one getting out, and it appeared she was caught on something. Before Jessica could get loose, Medina "took off" very fast when he "[h]eavily pressed the gas." The other girl testified that as soon as everyone got out, Medina sped away, dragging Jessica with the car. The witness added that they did not "even have enough time to react" before Medina sped off in an unsafe manner. The girls ran after Medina's car, yelling for him to stop.

San Antonio Police Department Sergeant Tommy Johnson investigated the incident. Sergeant Johnson testified Medina dragged Jessica behind his car for a total distance of 3.8 miles before finally coming to a stop. During cross-examination, Medina's counsel asked Sergeant Johnson whether he believed Medina used his vehicle as a deadly weapon. The State objected claiming the answer called for a legal conclusion. Medina's counsel claimed Sergeant Johnson was an expert and could answer. The trial court sustained the State's objection and explained that it did not require expert testimony to make its determination regarding a deadly weapon finding. Nonetheless, Medina's counsel was allowed to ask certain questions, including those pertaining to videos obtained from various businesses along Medina's route, to which Sergeant Johnson agreed the videos did not depict Medina driving in an "unusual" manner. However, Sergeant Johnson did not see video of or witness Medina driving away with Jessica entangled in the car's seatbelt, nor did he see the entirety of Medina's 3.8-mile drive.

According to Medina's mother, Medina was on probation for driving while intoxicated on the night of Jessica's death.

At the conclusion of the sentencing proceeding, the trial court found Medina used his car as a deadly weapon based on the court's review of the stipulated evidence, including the police reports describing the incident and the witness statements to the police. Moreover, the trial court considered the evidence presented during the sentencing proceeding, including the consistent testimonies of those involved in describing Medina driving recklessly before the incident that caused them to ask to get out of the car. The witnesses also testified that when Jessica was trying to exit the car, Medina sped off in his car very fast, which did not allow Jessica time to free herself from the seatbelt.

### LAW ON INTOXICATION MANSLAUGHTER AND DEADLY WEAPON

A person commits the offense of intoxication manslaughter if the person (1) operates a motor vehicle in a public place, (2) is intoxicated, and (3) by reason of that intoxication, causes the death of another by accident or mistake. *See* TEX. PENAL CODE ANN. § 49.08(a)(1), (2). Pursuant to statute, intoxication manslaughter is a strict liability offense; thus, no culpable mental state is necessary to convict a defendant of intoxication manslaughter. *See Strickland v. State*, 193 S.W.3d 662, 666 & n.3 (Tex. App.—Fort Worth 2006, pet. ref'd); *see also Torres v. State*, 52 S.W.3d 285, 286 (Tex. App.—Corpus Christi 2001, no pet.) ((explaining that "notwithstanding section 6.02(b), proof of culpable mental state not required for conviction of offense under chapter 49") (citing TEX. PENAL CODE ANN. §§ 49.08(a), 49.11)).

A deadly weapon is: "(A) a firearm or anything manifestly designed, made, or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." TEX. PENAL CODE ANN. § 1.07(a)(17). To determine whether the evidence supports a deadly weapon finding in cases involving motor vehicles, we conduct a two-part analysis. *Hilburn v. State*, 312 S.W.3d 169, 177 (Tex. App.—Fort Worth 2010, no pet.) (citing *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim.

App. 2009)). We first "evaluate the manner in which the defendant used the motor vehicle during the felony." *Sierra*, 280 S.W.3d at 255. We then "consider whether, during the felony, the motor vehicle was capable of causing death or serious bodily injury." *Id*.

When evaluating whether the defendant's driving was reckless or dangerous, we examine the manner in which the defendant operated a vehicle. *Couthren v. State*, 571 S.W.3d 786, 790 (Tex. Crim. App. 2019); *Sierra*, 280 S.W.3d at 255. In examining whether a defendant's driving was reckless or dangerous, we consider several factors, including but not limited to: (1) intoxication, *Tyra v. State*, 897 S.W.2d 796, 798 (Tex. Crim. App. 1995); (2) speeding, *Drichas v. State*, 175 S.W.3d 795, 797 (Tex. Crim. App. 2005); (3) disregarding traffic signs and signals, *id*. at 798; (4) driving erratically, *id*.; *Mann v. State*, 13 S.W.3d 89, 91–92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001); and (5) failure to control the vehicle, *Sierra*, 280 S.W.3d at 255–56.

"[A] motor vehicle is not a deadly weapon per se[] but can be found to be a deadly weapon if it is used in a manner that is capable of causing death or serious bodily injury." *Couthren*, 571 S.W.3d at 789. Proof of reckless driving, particularly when it in fact results in death or serious bodily injury, is sufficient to support a deadly weapon finding. *Sierra*, 280 S.W.3d at 256 (holding evidence sufficient to support deadly weapon finding where victim was pinned in vehicle, convulsing and struggling to breathe, and remained in the hospital for a month after the accident).

SUFFICIENCY OF THE EVIDENCE

In his first issue, Medina argues the trial court erred when finding his car was used as a deadly weapon, thereby, challenging the sufficiency of the evidence.

A. Standard of Review

When determining if sufficient evidence supports a deadly weapon finding, "we review the record to determine whether, after viewing the evidence in the light most favorable to the verdict,

any rational trier of fact could have found beyond a reasonable doubt that [Medina]'s vehicle was used or exhibited as a deadly weapon." *Couthern*, 571 S.W.3d at 789 (citing *Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014) (citations omitted)); *see also Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "[I]t is a fact-specific inquiry, and the facts may or may not support such a finding." *Clark v. State*, 573 S.W.3d 367, 373 (Tex. App.—Beaumont 2019, no pet.) (citing *Drichas*, 175 S.W.3d at 799).

## B. Application

With respect to the second part of the analysis—whether Medina's car was capable of causing death or serious bodily injury—the evidence is clear. "Anything, including a motor vehicle, which is actually used to cause the death of a human being, is a deadly weapon." *George v. State*, 117 S.W.3d 285, 289 (Tex. App.—Texarkana 2003, pet. ref'd) (citing *Tyra*, 897 S.W.2d at 799; *Ex parte McKithan*, 838 S.W.2d 560, 561 (Tex. Crim. App. 1992)). "This is necessarily so, because a thing which actually causes death is, by Penal Code definition, 'capable of causing death.'" *See George*, 117 S.W.3d at 289 (citing TEX. PENAL CODE ANN. § 1.07(a)(17)(B); *Tyra*, 897 S.W.2d at 799).

Regarding the first part of the analysis—whether Medina used his car in the manner that caused Jessica's death—we look to the evidence contained in Medina's stipulations to the evidence when he pled no contest to the offense, including several police reports and witness statements, and the testimony of the witnesses during the punishment proceeding. The evidence supports that Medina's reckless driving caused the girls in Medina's car to ask him to stop and let them out of the car. Moreover, the girls who testified during the punishment proceeding both explained that after getting out of Medina's car and noticing that Jessica had yet to free herself from the car's seatbelt, Medina sped off very fast in an unsafe manner, not giving anyone time to react, and dragging Jessica away with the car. The girls added that they even ran after Medina's car yelling

trying to have him stop because Jessica was entangled in the seatbelt. Unaware that he was dragging Jessica, Medina continued driving for approximately 3.8 miles. Moreover, the evidence, stipulated by Medina, proves Medina was intoxicated during the commission of the offense. *See Tyra*, 897 S.W.2d at 798–99. We conclude the evidence sufficiently supports that Medina drove his car in a reckless manner resulting in Jessica's death. *See Sierra*, 280 S.W.3d at 256. The evidence supports Medina used his car in a manner capable of causing death or serious bodily injury.

Viewing the evidence in the light most favorable to the trial court's deadly weapon finding, the evidence is sufficient to support the finding. *See Sierra*, 280 S.W.3d at 256; *Cook v. State*, 328 S.W.3d 95, 100 (Tex. App.—Fort Worth 2010, pet. ref'd) ("Cook's SUV was capable of, and did, in fact, cause Ochoa's death.").

We overrule Medina's first issue.

## EXCLUSION OF EXPERT TESTIMONY

In Medina's second and third issues, he asserts the trial court erred by excluding Sergeant Johnson's opinion as to whether Medina used his vehicle—in committing intoxication manslaughter—as a deadly weapon. Medina claims the trial court's exclusion of Sergeant Johnson's testimony was both a violation of his due process and an abuse of discretion.

### A. Preservation of Error

Initially, we note that after the trial court excluded Sergeant Johnson's opinion regarding whether Medina used his car as a deadly weapon, Medina did not make a bill of review. To preserve error, when the trial court excludes evidence, an offer of proof is required to inform the trial court of the substance of the evidence if its substance is not apparent from the record. *See* TEX. R. EVID. 103(a)(2). "The primary purpose of an offer of proof is to enable an appellate court to determine whether the exclusion was erroneous and harmful. A secondary purpose is to permit

the trial judge to reconsider his ruling in light of the actual evidence." *Mays v. State*, 285 S.W.3d 884, 890 (Tex. Crim. App. 2009).

Here, Sergeant Johnson agreed he saw nothing unusual about Medina's driving in the video clips he watched; however, Sergeant Johnson noted he did not obtain video of Medina driving the entire 3.8-mile route while dragging Jessica. Therefore, the record is not clear as to how Sergeant Johnson would have sufficient knowledge to answer the ultimate question. *See* TEX. R. EVID. 103(a)(2). Accordingly, Medina failed to preserve error for appellate review. *See Mays*, 285 S.W.3d at 891. Assuming Medina preserved his issues for review, however, his evidentiary issues pertaining to the exclusion of expert testimony lack merit.

B. Applicable law

An expert witness may offer an opinion if he is qualified to do so by his knowledge, skill, experience, training, or education and if scientific, technical, or other specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue. TEX. R. EVID. 702. Three requirements must be met before expert testimony can be admitted: "(1) The witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case." *Vela v. State*, 209 S.W.3d 128, 131 (Tex. Crim. App. 2006). "These conditions are commonly referred to as (1) qualification, (2) reliability, and (3) relevance." *Id*. Assuming Sergeant Johnson is qualified to opine on whether a vehicle is being used as a deadly weapon, the question of whether his testimony was reliable and relevant in this case remains unanswered.

The proponent of scientific evidence must show by clear and convincing proof that the proffered evidence is sufficiently reliable and relevant to assist the factfinder in accurately understanding other evidence or in determining a fact in issue. *See Wells v. State*, 611 S.W.3d 396,

426 (Tex. Crim. App. 2020) (citing *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000)). Because the Rule 702 inquiry is case-specific and fact-intensive, the reliability determination is flexible, and the trial court as the gatekeeper must determine how to assess the reliability of particular testimony. *See id.*

"*Nenno* set forth a framework for evaluating the reliability of expert testimony in fields of study outside the hard sciences." *Rhomer v. State*, 569 S.W.3d 664, 671 (Tex. Crim. App. 2019); *see Nenno v. State*, 970 S.W.2d 549, 561 (Tex. Crim. App. 1998), *overruled on other grounds by State v. Terrazas*, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). Thus, when assessing expert testimony in the "soft science" fields or fields that are based primarily upon experience and training, courts evaluate the reliability of such testimony by relying on the following factors: "(1) whether the field of expertise is a legitimate one, (2) whether the subject matter of the expert's testimony is within the scope of that field, and (3) whether the expert's testimony properly relies upon and/or utilizes the principles involved in the field." *Nenno*, 970 S.W.2d at 561. Thus, "reliability should be evaluated by reference to the standards applicable to the particular professional field in question." *Coble v. State*, 330 S.W.3d 253, 275 (Tex. Crim. App. 2010).

On the other hand, "[r]elevance is 'a looser notion than reliability' and is 'a simpler, more straight-forward matter to establish.'" *Tillman v. State*, 354 S.W.3d 425, 438 (Tex. Crim. App. 2011) (quoting *Jordan v. State*, 928 S.W.2d 550, 555 (Tex. Crim. App. 1996)). To establish relevance, the expert's testimony must assist the trier of fact and be sufficiently tied to the facts of the case. *See Tillman*, 354 S.W.3d at 438. The question under Rule 702 is not whether the factfinder knows something about the subject but whether the expert can expand their understanding in a relevant way. *See id.* at 441. Expert testimony can be deemed "helpful" to the factfinder on an issue in dispute, by either validating or calling into question the factfinder's own inclinations,

including prompting the factfinder to reconsider any preconceived notions. *Jordan*, 928 S.W.2d at 556.

The Texas Rules of Appellate Procedure provide for two different standards for reversible error in criminal cases. If the record reveals constitutional error, "the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment." *See* TEX. R. APP. P. 44.2(a). If the error is non-constitutional, the reviewing court must disregard it unless the error affected the defendant's "substantial rights." *See* TEX. R. APP. P. 44.2(b).

The erroneous exclusion of evidence generally constitutes non-constitutional error and is reviewed under Rule 44.2(b). *See Walters v. State*, 247 S.W.3d 204, 219 (Tex. Crim. App. 2007); *Tillman v. State*, 376 S.W.3d 188, 198 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd). However, the erroneous exclusion of evidence can constitute constitutional error if:

> (1) a state evidentiary rule categorically and arbitrarily prohibits the defendant from offering otherwise relevant, reliable evidence vital to his defense; or

> (2) a trial court's clearly erroneous ruling results in the exclusion of admissible evidence that forms the vital core of a defendant's theory of defense and effectively prevents him from presenting that defense.

*Walters*, 247 S.W.3d at 219. The exclusion of evidence that would only "incrementally" further the defendant's defensive theory is not constitutional error. *Id.* at 222 (quoting *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005)); *see Potier v. State*, 68 S.W.3d 657, 665–66 (Tex. Crim. App. 2002) (("That [the defendant] was unable to . . . present his case to the extent and in the form he desired is not prejudicial where, as here, he was not prevented from presenting the substance of his defense to the jury.") (quoting *United States v. Willie*, 941 F.2d 1384, 1398–99 (10th Cir. 1991))).

C. Due Process

In his second issue, Medina contends the trial court's exclusion of Sergeant Johnson's opinion as to whether Medina used his vehicle as a deadly weapon violated his due process rights because he was prohibited from presenting his defense. Medina's argument is confined to the punishment proceeding, however, as Medina stipulated to the facts pertaining to his commission of intoxication manslaughter.

While the trial court excluded Sergeant Johnson's opinion of the ultimate question— whether Medina used his car as a deadly weapon—the trial court permitted Medina to question Sergeant Johnson about his opinion on whether Medina's use of his vehicle, as reflected on videos from select portions of Medina's route, appeared unusual from the manner a vehicle is intended to be used. Sergeant Johnson responded that nothing in the videos showed Medina driving in an unusual manner, but Sergeant Johnson also stated he did not see videos depicting the entire route Medina drove the night of Jessica's death. Importantly, we note Sergeant Johnson did not see video of Medina stopping to let the girls out, Jessica becoming entangled in the seatbelt, or Medina speeding away dragging Jessica.

We conclude Medina was not effectively prevented from presenting his defensive theory. Sergeant Johnson's excluded testimony would have only incrementally furthered Medina's defensive theory, if at all, because Sergeant Johnson's opinion was limited to only the portion of Medina's route captured on video. *See Walters*, 247 S.W.3d at 219. The trial court's exclusion of Sergeant Johnson's testimony did not violate Medina's due process right. Therefore, error, if any, in excluding Sergeant Johnson's testimony would be non-constitutional. *See Walters*, 247 S.W.3d at 219; *Ray*, 178 S.W.3d at 835.

We overrule Medina's second issue.

D.  Abuse of Discretion

With respect to any potential non-constitutional error[1] regarding the trial court's exclusion of Sergeant Johnson's opinion, as contended by Medina in his third issue, we review a trial court's ruling on the admission of evidence for an abuse of discretion. *See Rhomer*, 569 S.W.3d at 669. A trial court abuses its discretion when it acts without reference to any guiding rules and principles or acts arbitrarily or unreasonably. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). The trial court's decision will be upheld if it lies within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018).

In this proceeding, the trial court served as both the gatekeeper of admissible evidence and the factfinder. It noted, when excluding Sergeant Johnson's testimony, that it did not need Sergeant Johnson's opinion as to whether Medina used his car as a deadly weapon because the term "deadly weapon" is defined by law, and the court is capable of evaluating the evidence to make its own determination. Moreover, Sergeant Johnson's opinion was limited to only the videos obtained from various local businesses, which represented only a fraction of Medina's route. Notably, Sergeant Johnson did not see any video of Medina initially driving away with Jessica entangled in the seatbelt. The trial court could have concluded Sergeant Johnson's opinion lacked reliability and relevance as his opinion would have been based on incomplete facts essential to the trial court's ultimate finding. Thus, the trial court did not abuse its discretion in determining Sergeant Johnson's opinion would not assist it in making its own determination. *See Vela*, 209 S.W.3d at 131; *Tillman*, 354 S.W.3d at 438 (explaining the expert's testimony must assist the trier of fact and be sufficiently tied to the case's facts); *see also* TEX. R. EVID. 702.

---

[1] "Non-constitutional errors require reversal only if they affect an appellant's substantial rights—*i.e.*, when they have a substantial and injurious effect or influence in determining the jury's verdict." *Cook v. State*, 665 S.W.3d 595, 599 (Tex. Crim. App. 2023); *see* TEX. R. APP. P. 44.2(b).

We overrule Medina's third issue.

### CONSIDERATION OF FULL RANGE OF PUNISHMENT

In Medina's fourth and final issue, he contends the trial court predetermined it would make the affirmative deadly weapon finding at the beginning of the sentencing proceeding, thereby, failing to consider the full range of punishment when sentencing Medina.

A trial court's arbitrary refusal to consider the entire range of punishment for an offense and any mitigating evidence or its arbitrary decision to impose a predetermined punishment without consideration of the evidence can constitute a violation of a defendant's right to due process of law. *Tovar v. State*, 619 S.W.3d 783, 793 (Tex. App.—San Antonio 2020, pet. ref'd) (citations omitted). "Absent a clear showing of bias, a trial court's actions will be presumed to have been correct." *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006). Bias is not shown when (1) the trial court hears extensive evidence before assessing punishment, (2) the record contains explicit evidence that the trial court considered the full range of punishment, and (3) the trial court made no comments indicating consideration of less than the full range of punishment. *Id*.

Initially, we note that although a deadly weapon finding "may impact a sentence," the finding is not part of the "sentence" as contemplated by the legislature. *State v. Ross*, 953 S.W.2d 748, 751 (Tex. Crim. App. 1997). "While a deadly weapon finding does affect a defendant's eligibility for probation and parole, it does not alter the range of punishment to which the defendant is subject, or the number of years assessed." *Ex parte Huskins*, 176 S.W.3d 818, 821 (Tex. Crim. App. 2005). Therefore, the trial court's deadly weapon finding has no bearing on the trial court's consideration of the full range of punishment. *See id.*

The punishment range for a second-degree felony is two to twenty years. *See* TEX. PENAL CODE ANN. § 12.33. The trial court assessed Medina's punishment at fifteen years in prison, which

is below the maximum range of punishment for intoxication manslaughter, and within the maximum punishment agreed upon by Medina and the State.

Despite the trial court's statement, we cannot locate anything in the record to indicate the trial court exhibited any bias or partiality when it finally made the finding. The trial court heard evidence during the sentencing proceeding from two eyewitnesses who were in Medina's car immediately before Medina stopped to let them out and who witnessed Medina speed away dragging Jessica before she could untangle herself from the seatbelt. The trial court also heard testimony from Sergeant Johnson regarding his investigation and from witnesses on Medina's behalf. In addition to this evidence, the trial court also had before it, Medina's open plea of no contest and the corresponding plea papers containing detailed police reports and witness statements within Medina's stipulation to the facts.

Nothing in this record indicates the trial court did not consider the full range of punishment. Moreover, nothing indicates a bias or partiality or that the trial court did not consider the evidence it had before the proceeding as well as the evidence presented during the proceeding when the trial court made its deadly weapon finding at the conclusion of the proceeding.

We overrule Medina's fourth issue.

## CONCLUSION

Having overruled Medina's four appellate issues, we affirm the trial court's judgment, including its deadly weapon finding.

Irene Rios, Justice

DO NOT PUBLISH