

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-23-00817-CR

Randy Carl **STIFFLER**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 81st/218th Judicial District Court, Atascosa County, Texas
Trial Court No. 21-11-0454-CRA
Honorable Jennifer M. Dillingham, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Luz Elena D. Chapa, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: August 28, 2024

AFFIRMED

Appellant Randy Carl Stiffler appeals his conviction for driving while intoxicated—third

or more. In three issues, Stiffler challenges the deadly weapon finding, the admission of fingerprint

evidence, and a prior felony conviction. We affirm the trial court's judgment.

## BACKGROUND

On June 1, 2021, Stiffler was involved in a motor vehicle collision after the vehicle he was

driving crossed a median and drove into a vehicle in another lane without yielding. Law

enforcement stopped his vehicle, determined he was intoxicated, and arrested him for driving while

intoxicated (DWI). Stiffler was subsequently indicted for DWI-third or more, a third-degree felony. *See* TEX. PENAL CODE §§ 49.04(a), 49.09(b)(2) (third degree felony based on two prior convictions). The indictment alleged two prior DWI convictions in addition to the current DWI offense: (1) a 1993 DWI conviction in Midland County and (2) a 1995 DWI conviction in Tarrant County. The indictment also alleged Stiffler used or exhibited a deadly weapon: his motor vehicle, during the commission of the offense. Stiffler pled not guilty and proceeded to a jury trial.

At trial, the State presented the testimony of the officer who responded to the accident, the Texas Department of Public Safety (DPS) Trooper who investigated Stiffler for DWI, the complainant involved in the accident, a forensic toxicologist who testified to Stiffler's blood alcohol concentration (BAC) level, and a fingerprint expert who offered evidence of Stiffler's prior convictions. In addition, the bodycam video of both officers and the security video footage of the collision were admitted into evidence, along with certified copies of the prior convictions.

The jury found Stiffler guilty of DWI-third or more and also made an affirmative finding Stiffler used his motor vehicle as a deadly weapon. The trial court rendered judgment in accordance with the jury's verdict and sentenced Stiffler to ten years' imprisonment. Stiffler appealed.

### DEADLY WEAPON FINDING

In his first issue, Stiffler argues the evidence is insufficient to support the jury's finding he used his vehicle as a deadly weapon during the DWI offense. Specifically, he argues the State's evidence is insufficient because it does not prove his driving put other people in actual danger, rather than just hypothetical danger. *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (to sustain deadly weapon finding, the evidence must show (1) object meets statutory definition of dangerous weapon, (2) deadly weapon was used or exhibited during transaction from which felony arises, and (3) other people were put in actual danger).

A person commits the offense of driving while intoxicated by operating a motor vehicle in a public place while intoxicated. TEX. PENAL CODE § 49.04(a). If the evidence at trial establishes the defendant has been previously convicted twice of a DWI or a related offense, the charged offense is a third-degree felony. TEX. PENAL CODE § 49.09(b)(2). In any felony case, if the evidence shows the defendant used or exhibited a deadly weapon, the trial court is required to enter a deadly weapon finding in the judgment; thus, a deadly weapon finding may be appropriate in a felony DWI case. *Couthren v. State*, 571 S.W.3d 786, 789 (Tex. Crim. App. 2019). A motor vehicle may be a deadly weapon depending on the manner of its use. *Id.*; *see* TEX. PENAL CODE § 1.07(a)(17)(B) (defining a deadly weapon in part as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury"). Specific intent to use a motor vehicle as a deadly weapon is not required. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000).

When addressing a sufficiency challenge to a deadly weapon finding in a felony DWI case, we view the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found beyond a reasonable doubt the defendant's vehicle was used or exhibited as a deadly weapon. *Couthren*, 571 S.W.3d at 789; *Brister v. State*, 449 S.W.3d 490, 493 (Tex. Crim. App. 2014). We "resolv[e] any factual disputes in favor of the verdict" and "defer[] to the factfinder to "fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Flores v. State*, 620 S.W.3d 154, 158 (Tex. Crim. App. 2021) (quoting *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016)) (internal quotation marks omitted).

We conduct a two-part analysis, first examining the manner in which the defendant operated the vehicle to determine whether his driving was reckless or dangerous. *See Couthren*, 571 S.W.3d at 790, 793 (a "fact intensive inquiry" into the vehicle's manner of use in a DWI case

is required); *Sierra v. State*, 280 S.W.3d 250, 255 (Tex. Crim. App. 2009). Second, we consider whether the evidence shows the defendant's manner of driving the vehicle was capable of causing death or serious bodily injury. *Couthren*, 571 S.W.3d at 790; *Sierra*, 280 S.W.3d at 255. While relevant, evidence of the driver's intoxication and the occurrence of a collision alone do not support a deadly weapon finding in the absence of evidence the vehicle was driven in a deadly manner during the DWI offense. *Couthren*, 571 S.W.3d at 790 ("To support a deadly weapon finding, there must be evidence that the manner of driving was capable of causing death or serious bodily injury apart from the fact of a collision and the defendant's intoxication."). Someone other than the DWI driver must have been actually endangered by the driver's manner of use of the vehicle. *See Brister v. State*, 449 S.W.3d 490, 494 (Tex. Crim. App. 2014). "[A]ctual danger means one that is not merely hypothetical." *Id.* "[E]vidence that others were endangered" is required and "a hypothetical potential for danger if others had been present" will not be sufficient to support a deadly weapon finding. *Sierra*, 280 S.W.3d at 254 (quoting *Mann v. State*, 13 S.W.3d 89, 92 (Tex. App.—Austin 2000), *aff'd*, 58 S.W.3d 132 (Tex. Crim. App. 2001)) (internal quotation marks omitted).

### A. Reckless and Dangerous Driving

There is sufficient evidence to show Stiffler's driving was reckless and dangerous. *See Couthren*, 571 S.W.3d at 793. The forensic toxicologist testified Stiffler's blood draw taken two hours after he was stopped showed he still had a BAC of 0.145, compared to the legal limit of 0.08. The BAC level supports a reasonable inference Stiffler was highly intoxicated at the time of the collision. Both law enforcement officers testified Stiffler showed signs of intoxication in their interactions with him. Former Atascosa County Sheriff's Deputy Shane Billings testified when he apprehended Stiffler after he fled the accident scene, he smelled the odor of alcohol inside Stiffler's truck. Deputy Billings also observed Stiffler having to brace himself twice on the truck when he exited to inspect the damage to the truck's front passenger side bumper. DPS Trooper Travis

Bound testified he initially arrived at the accident scene to conduct a hit and run crash investigation. But when he later made contact with Stiffler at the location where Billings stopped him, Trooper Bound conducted a DWI investigation based on his observations of alcohol on Stiffler's breath, his glassy and bloodshot eyes, and his slurred speech. Trooper Bound testified another factor indicating intoxication was Stiffler's "dangerous driving behavior."

While there was no direct testimony showing Stiffler was speeding before the collision, a reasonable inference could be drawn suggesting he was speeding based on other evidence. Joyclynn Alcorta, the victim of the collision, provided an eyewitness account, testifying Stiffler disregarded a traffic sign, failed to keep a proper lookout, and failed to brake or otherwise control his vehicle immediately before the collision. Alcorta testified she was driving home from work along Texas State Highway (SH) 97 toward Pleasanton when the collision occurred. SH 97 is a four-lane highway separated by a grassy median. Alcorta was driving about 40 mph in the inside lane closest to the median as she approached the intersection with Interstate Highway 37, for which she had a green light. As she approached a Tex Best gas station on her left, Alcorta saw Stiffler's pickup truck pull out of the gas station and "cut all the way across through the median" without stopping at a yield sign in the median. As Stiffler began to enter her lane, Alcorta "braked as hard as [she] could," but Stiffler's truck hit the front driver's side of her vehicle "around the tire . . . where the door hinge is." She tried to avoid the collision because she did not want to get "T-boned" by Stiffler's truck. After the collision, Alcorta slowed down to let Stiffler's truck get in front of her. Alcorta followed Stiffler, waiting for him to pull over so they could exchange information. Stiffler briefly stopped at a church parking lot, and Alcorta pulled in as well, but she could not open her driver side door to get out. Stiffler exited his vehicle and started to walk toward Alcorta, but then turned around, got back in his truck, and drove off in the other direction. Alcorta

was already on the phone with 911 and remained in her car at the scene until an officer arrived. Alcorta provided a description of Stiffler and his truck, and he was apprehended shortly thereafter.[1]

We conclude this evidence, and the reasonable inferences that may be drawn from it, supports a finding the manner in which Stiffler operated his vehicle was reckless and dangerous. *See Sierra*, 280 S.W.3d at 255-56 (officer testified normal, undistracted driver in defendant's position would have stopped before hitting other vehicle and estimated defendant was driving between public roadway and highway speeds at time of impact which supported inferences of speeding and failure to control his vehicle).

**B. Manner of Driving Capable of Causing Death or Serious Bodily Injury to Others**

We next determine whether the evidence is sufficient to show Stiffler's reckless and dangerous use of his vehicle was capable of causing death or serious bodily injury to others. *See Couthren*, 571 S.W.3d at 790; *Drichas*, 175 S.W.3d at 797–98. Stiffler asserts there was no evidence to support a finding other people were actually endangered by his manner of driving, only hypothetical harm. We disagree.

The evidence shows Alcorta, as well as the other drivers around her, were actually endangered by Stiffler's reckless and dangerous use of his vehicle and could have suffered death or serious bodily injury. *See Brister*, 449 S.W.3d at 494. Alcorta testified she slammed on her brakes "as hard as [she] could," explaining she "tried to just let him have [the] right-of-way, because I didn't want to get T-boned." Despite her evasive action, the impact was hard enough to prevent her from opening her driver's door afterward. Trooper Bound testified the damage to Alcorta's vehicle was over $1,000, which made it a "reportable" crash. He also testified a vehicle

---

[1] Both law enforcement officers testified Stiffler committed another offense by fleeing the accident scene and failing to exchange information with Alcorta. Trooper Bound opined Stiffler engaged in dangerous driving behavior by being intoxicated at the time of the collision, but also by leaving the scene and continuing to drive afterward while intoxicated.

is capable of causing death or serious bodily injury and can be a deadly weapon depending on its use. The fact that Alcorta took evasive action to avoid a more serious collision and serious injury does not undermine the capability of Stiffler's driving to cause her to suffer death or serious bodily injury. *See Mann*, 13 S.W.3d at 92 (only reason collision did not occur was because complainant driver took evasive action when defendant crossed center line and thereby avoided serious crash capable of causing death or serious bodily injury).

In addition, Alcorta testified there were "definitely other cars around . . . maybe not directly next to [her], but to the side and back of her" vehicle at the time of the collision. In trying to evade the collision, Alcorta stated she tried not to "jerk the [steering] wheel" because "there were other vehicles," and "I didn't want to hit anybody else." She added, "I didn't want to veer off and . . . cause a bigger accident." Trooper Bound testified the crash occurred at 7:44 p.m. Thus, the testimony in this case establishes the presence of other drivers nearby at the time of the collision who could have been seriously injured, in addition to Alcorta herself. *See Sierra*, 280 S.W.3d at 254; *see also Moore v. State*, 520 S.W.3d 906, 912–13 (Tex. Crim. App. 2017) (considering time of day and presence of other vehicles in upholding deadly weapon finding where evidence showed defendant was driving fast enough as he approached red light to cause chain reaction of collisions and he evidently failed to apply his brakes at all, or applied them too late, to avoid substantial impact).

In sum, the evidence shows Stiffler exited a parking lot and drove through a median without obeying a yield sign, did not safely merge into the lane of traffic on the other side of the median, did not yield to the car already in that lane, failed to control his vehicle, and failed to slow down or apply his brakes at all or soon enough to avoid hitting Alcorta's car. Only Alcorta's evasive action avoided a more serious collision, i.e., being "T-boned," which was capable of causing her death or serious bodily injury. In addition, there were other drivers nearby at the time who were

actually endangered by Stiffler's manner of driving his vehicle. In addition, Stiffler had a blood alcohol content of almost twice the legal limit.

Viewing all the evidence and the reasonable inferences drawn therefrom in the light most favorable to the jury's deadly weapon finding, we conclude the evidence is sufficient to show Stiffler's driving was reckless and dangerous and his manner of driving his vehicle was capable of causing death or serious bodily injury to others. We therefore overrule Stiffler's point of error and affirm the deadly weapon finding.

### ADMISSION OF EVIDENCE

In his second and third issues, Stiffler argues the trial court erred in admitting (1) fingerprint evidence taken from him at trial and (2) the judgment for a prior felony DWI conviction not alleged in the indictment. He contends the State used both pieces of evidence to link him to his prior DWI convictions. We review a trial court's ruling admitting or excluding evidence for an abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008) (trial court abuses its discretion when its ruling lies outside the zone of reasonable disagreement).

### A. State's Exhibit 10

After Stiffler pled "not true" to the prior DWI convictions alleged in the indictment, the State requested permission from the trial court to fingerprint Stiffler outside the jury's presence, so its fingerprint expert could compare his known fingerprints to those on the prior judgments of conviction. Stiffler objected to the taking of his fingerprints, asserting it was "prejudicial" and "burdensome." Stiffler argued the State should use the existing fingerprints from his booking at the Atascosa County Jail. The State responded it was more efficient if the court were to allow it to take new fingerprints because its fingerprint expert was present in court and ready to compare the new fingerprints to the prior judgments to prove identity; otherwise, the State would need to get the custodian of records and other witnesses from the Atascosa County Sheriff's Office to court to

authenticate the jail fingerprints, resulting in a trial delay. The trial court overruled Stiffler's objections and ordered the State to fingerprint Stiffler outside the jury's presence during a break. The fingerprint card was marked as State's Exhibit 10. The card consists of a single sheet of paper with fingerprint markings, identifying fingerprints from Stiffler's left and right hands.

During his testimony, the State's fingerprint expert used Exhibit 10 to compare the fingerprints on the prior DWI judgments of conviction. At the conclusion of the expert's testimony, the State moved to admit State's Exhibit 10. Stiffler objected, arguing Exhibit 10 was "work product" and was "not properly authenticated." The trial court overruled Stiffler's objections and admitted the fingerprint card into evidence.

### 1. Rule 403 Analysis

On appeal, Stiffler argues admission of Exhibit 10 was more prejudicial than probative, and it should have been excluded under Rule 403. The Rule provides "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence." TEX. R. EVID. 403. "Unfair prejudice refers to the evidence's 'tendency to tempt the jury into finding guilt on grounds apart from proof of the offense charged.'" *Perkins v. State*, 664 S.W.3d 209, 216 (Tex. Crim. App. 2022) (quoting *State v. Mechler*, 153 S.W.3d 435, 440 (Tex. Crim. App. 2005)). While an objecting party need not cite to a specific rule of evidence to preserve an objection, the party must still make the basis of the objection clear to the trial court. *See Rivas v. State*, 275 S.W.3d 880, 887 (Tex. Crim. App. 2009). Stiffler did not argue in the trial court the admission of the new fingerprint evidence was more prejudicial than probative; he merely objected that the taking of the fingerprints during trial was "prejudicial."

Even if Stiffler had made a clear Rule 403 objection, the trial court did not abuse its discretion in allowing the fingerprinting at trial in the interest of judicial economy and in admitting the fingerprint evidence. A Rule 403 analysis should generally "include, but is not limited to, a balancing of the following factors: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence." *Pugh v. State*, 639 S.W.3d 72, 86 (Tex. Crim. App. 2022); *Hall v. State*, 663 S.W.3d 15, 32 (Tex. Crim. App. 2021) ("When undertaking a Rule 403 analysis, a trial court must balance: '(1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.'" (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006))).

We may only reverse the trial court's judgment "rarely and only after a clear abuse of discretion." *Perkins*, 664 S.W.3d at 217 (quoting *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999)) (internal quotation marks omitted). "The reviewing court, however, cannot simply conclude 'the trial court did in fact conduct the requir[ed] balancing test and did not rule arbitrarily and capriciously.'" *Id.* (quoting *Mozon*, 991 S.W.2d at 847) (internal quotation marks omitted). We must "measure the trial court's ruling against the relevant criteria by which a Rule 403 decision is made." *Id.*

Turning first to the probative value, the trial court could have concluded with respect to the State's Exhibit 10 the probative value of the fingerprints was high because the State's expert had

used the evidence to link Stiffler to the prior DWI offenses charged in the indictment. This factor weighs in favor of admission.

As to the potential to impress the jury in some irrational, yet indelible way, the trial court could have found this risk to be low. *See Pugh*, 639 S.W.3d at 86. Moreover, Stiffler received the original fingerprint evidence in discovery and knew the State would use his fingerprints to prove he was the person convicted of the prior DWI offenses alleged for enhancement. *See Perkins*, 664 S.W.3d at 216. In other words, the fingerprints, far from distracting the jury from the main issues, are proof of one of the main issues—his prior convictions. *See Hall*, 663 S.W.3d at 32. Moreover, Stiffler does not explain in what manner or how the new fingerprints had the potential to impress the jury in some irrational, yet indelible way. Indeed, State's Exhibit 10 consists of little more than a single sheet of paper with fingerprint markings, and writing identifying the fingerprints as coming from Stiffler's left and right hands. This factor therefore weighs in favor of admission.

Turning to the time needed to develop the evidence, the State addressed the evidence with a single witness: Atascosa County District Attorney's Office investigator and fingerprint expert Todd McCrohan. The testimony related to Exhibit 10 spanned six pages over a 250-page trial transcript. And it was raised once during the State's closing. This factor weighs in favor of admission.

Finally, the State's need for the evidence was low. As the State explained, Stiffler did not stipulate to his prior convictions. As a result, the State was required to prove them through the use of fingerprints. However, the State already had Stiffler's fingerprints from his arrest by the Atascosa County Sheriff's Office in connection with his current trial. But the State preferred to have Stiffler fingerprinted right then outside of the presence of the jury because it would have

otherwise been required to retrieve those fingerprints from the Sheriff's Office and call a witness to authenticate them. This factor weighs against admission.[2]

Measuring the trial court's ruling against the relevant criteria by which a Rule 403 decision is made, we cannot conclude the trial court's admission of State's Exhibit 10 was outside the zone of reasonable disagreement. *See Perkins*, 664 S.W.3d at 217. Because we cannot conclude the admission of the exhibit was outside the zone of reasonable disagreement, we cannot conclude the trial court abused its discretion by admitting the exhibit. Accordingly, we overrule this point of error.

### 2. Ineffective Assistance Due to Lack of Article 39.14 Objection

Stiffler also argues admission of the fingerprint card violated his right to review the State's evidence prior to trial pursuant to state and federal due process clauses and article 39.14 of the Texas Code of Criminal Procedure. However, he did not raise this objection at trial, and therefore, it is not preserved for review. *See* TEX. R. APP. P. 33.1; *Compton v. State*, 666 S.W.3d 685, 730–31 (Tex. Crim. App. 2023) (overruling contention due process violated in connection with state argument because appellant did not object to argument at trial).

Stiffler argues in the alternative if this argument was not preserved, then his trial counsel rendered ineffective assistance. We review a claim of ineffective assistance under the two-pronged test established in *Strickland v. Washington*, determining whether the record shows (1) counsel's performance was deficient, and (2) the defendant suffered prejudice as a result of counsel's error. *Hart v. State*, 667 S.W.3d 774, 781 (Tex. Crim. App. 2023) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

---

[2] We also note the trial court was well within its discretion in determining it was more efficient to allow the State to take new fingerprints rather than wait for the State to bring in other witnesses to authenticate the jail fingerprints. *See Dang v. State*, 154 S.W.3d 616, 619 (Tex. Crim. App. 2005) (trial courts have broad discretion in managing the course of a trial).

"To establish that counsel's actions were deficient, the appellant must show, by a preponderance of the evidence, that counsel's actions fell below an objective standard of reasonableness." *Id*. "There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered trial strategy." *Id*. (quoting *Strickland*, 466 U.S. at 689) (internal quotation marks omitted). The court views the reasonableness of counsel's actions in light of all the circumstances at the time, rather than through the benefit of hindsight. *Id*. at 782.

To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Compton v. State*, 666 S.W.3d 685, 714 (Tex. Crim. App. 2023) (quoting *Strickland*, 466 U.S. at 687). Any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the purported ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). Failure to establish either deficient performance or prejudice defeats an ineffective assistance claim. *Id*.

Here, Stiffler argues the State, by fingerprinting him, "created new evidence" he did not have the opportunity to review or challenge before trial, and his counsel was deficient by failing to object under article 39.14. *See* TEX. CODE CRIM. PROC. art. 39.14 (defendant has right to review State's evidence before trial). Stiffler contends the lack of an objection prejudiced him because he had no opportunity to obtain a fingerprint expert of his own or prepare to cross-examine the State's

expert on the fingerprints before they were used to prove an element of the offense, i.e., the prior DWI convictions.

Even assuming counsel's performance in this regard was deficient, Stiffler has not met his burden to establish prejudice under *Strickland*. Stiffler concedes he received the jail fingerprint evidence during pretrial discovery and had notice the State would attempt to prove his prior convictions by comparing his fingerprints. He had ample time to prepare his trial strategy with respect to the prior convictions and to retain a fingerprint expert before trial, whether to compare the fingerprints taken at the jail or at trial. There is nothing in the record to indicate the fingerprints taken during trial were anything less than cumulative of the fingerprints taken at the jail. Stiffler does not argue there was some substantive difference between the sets of fingerprints that would have changed the outcome of the trial. We therefore conclude Stiffler failed to show a reasonable probability the outcome of his trial would have been different if counsel had raised the 39.14 objection at trial. Because Stiffler has failed to show a reasonable probability the outcome of his trial would have been different, we cannot conclude Stiffler's trial counsel rendered ineffective assistance.

**B. Prior Felony DWI Conviction from Denton County (State's Exhibit 13)**

Stiffler argues the trial court erred in admitting evidence of a prior felony DWI conviction in Denton County, Texas (State's Exhibit 13) to authenticate his convictions set forth in State's Exhibit 11 and 12. Specifically he contends the trial court's admission of Exhibit 13 was in violation of Rule 403 of the Texas Rules of Evidence.

**1. The Record**

In order to prove Stiffler was the person convicted of the two prior DWI offenses alleged in the indictment, the State again relied on its fingerprint expert, McCrohan. McCrohan testified he compared Stiffler's known fingerprints on Exhibit 10 with the fingerprints on the judgments of

conviction for the prior DWI offenses pled in the indictment. After explaining his methodology, McCrohan stated Stiffler's fingerprints matched those on the certified copy of the judgment from Midland County (Exhibit 11). With respect to the judgment from Tarrant County (Exhibit 12), however, McCrohan was unable to perform the same comparison because the fingerprints on that judgment were smeared. The State then presented McCrohan with a certified copy of a judgment of conviction for felony DWI from Denton County for comparison and identification purposes. McCrohan testified, without objection, the Denton County judgment (Exhibit 13) listed Stiffler's full name and referenced the DWI convictions in Midland County and Tarrant County by cause number, court, date of judgment, and defendant's name (Stiffler) and included a fingerprint that matched Stiffler's known fingerprints. McCrohan testified the purpose of fingerprints on judgments is to precisely identify a defendant if he claims the name on a judgment is not him. McCrohan opined, based on his fingerprint comparisons, Stiffler was the person convicted of DWI in the Midland County and Tarrant County judgments as alleged in the indictment.

At the conclusion of McCrohan's testimony, the State moved to admit the Denton County judgment (Exhibit 13) to rebut the argument by defense counsel suggesting Stiffler had not been sufficiently linked to the Tarrant County judgment. Stiffler objected that the Denton County judgment was "more prejudicial than probative" because it was a felony conviction. He also argued its admission was unnecessary because the Midland County and Tarrant County judgments had already been admitted.[3] The State responded that defense counsel's cross-examination of McCrohan suggested the Tarrant County judgment was not him, and it was entitled to rebut that inference and prove up Stiffler's prior convictions through any method of proof. The State argued the Denton County judgment was probative as the "final connecting dot" to link the Midland and

---

[3] Stiffler also objected that the judgment was not properly authenticated but does not raise that argument on appeal.

Tarrant County DWIs to Stiffler through the judgment's incorporation of the details of those prior judgments. The State suggested limiting the prejudice of the conviction being a felony with a limiting instruction to the jury that the judgment was only being admitted for identification purposes and not as a third prior DWI conviction. The trial court overruled Stiffler's objections, but ordered the Denton County judgment redacted as to any "felony" references and all punishment, confinement, and jail credit terms, and thereafter admitted it as Exhibit 13.

### 2. Analysis

Turning first to the probative value, the trial court could have found the probative value of State's Exhibit 13 was high. Defense counsel expressly confirmed his intent to challenge the defendant's identity on the Tarrant County judgment in front of the jury and did so through cross-examination. The State was entitled to rebut that inference and prove Stiffler's prior convictions by any method of proof. *See Markwell v. State*, 641 S.W.3d 530, 533–34 (Tex. App.—Austin 2022, pet. ref'd) (providing State may link prior convictions to defendant by various methods, including expert testimony identifying fingerprints from prior convictions as identical with defendant's known fingerprints). Moreover, by pleading guilty to the DWI in Denton County, Stiffler judicially admitted he was the defendant on the Tarrant County judgment, permitting the Denton County judgment to be enhanced to a felony based on prior convictions. *See Landon v. State*, 222 S.W.3d 75, 78–79 (Tex. App.—Tyler 2006, no pet.) (citing *Dinnery v. State*, 592 S.W.2d 343, 351 (Tex. Crim. App. 1979)) (guilty plea is judicial admission of factual guilt of charged offense). This factor weighs in favor of admission.

As to the potential to impress the jury in some irrational, yet indelible way, Stiffler cites no legal authority showing the potential prejudice from admitting a prior felony conviction substantially outweighs its probative value in proving a defendant's identity on other prior convictions required as evidence for his conviction for DWI-third or more. Even if he had, the trial

court redacted any "felony" references in Exhibit 13 along with all punishment, confinement, and jail credit terms, greatly reducing the risk of any unfair prejudice to Stiffler. In addition, the admission of the redacted copy of the judgment was merely cumulative of McCrohan's unobjected-to testimony about the details of the judgment. This factor weighs in favor of admission.

Turning to the time needed to develop the evidence, the State addressed the evidence with the same fingerprint witness—McCrohan—it used for Exhibit 10. The testimony related to Exhibit 13 consisted of a few sentences across ten pages in a 250-page transcript. And it was raised once during the State's closing. This factor weighs in favor of admission.

Finally, the State's need for the evidence was moderate. The State needed Exhibit 13 to respond to defense counsel's cross-examination of McCrohan, which suggested the Tarrant County judgment was not him. Without the proof, the State would have had a difficult time demonstrating the Tarrant County prior DWI conviction. This factor weighs in favor of admission.

Measuring the trial court's ruling against the relevant criteria by which a Rule 403 decision is made, we cannot conclude the trial court's admission of State's Exhibit 13 was outside the zone of reasonable disagreement. *See Perkins*, 664 S.W.3d at 217. Because we cannot conclude the admission of the exhibit was outside the zone of reasonable disagreement, we cannot conclude the trial court abused its discretion by admitting the exhibit. Accordingly, we overrule this point of error.

### 3. Stiffler's Other Contentions

Finally, Stiffler raises another argument, asserting the Denton County judgment constituted extraneous offense evidence which tended to show he had a propensity to commit DWI offenses in violation of Rule 404(b). *See* TEX. R. EVID. 404(b) (prohibiting admission of extraneous offense evidence to prove character). However, Stiffler did not raise this objection in the trial court, and

nothing is preserved for review. TEX. R. APP. P. 33.1. His alternative argument his trial counsel was ineffective by failing to make a Rule 404(b) objection also fails because Stiffler has shown no prejudice from admission of the redacted judgment containing no details of the extraneous offense. *See Strickland*, 466 U.S. at 694 (prejudice prong requires showing a reasonable probability the outcome would have been different); *see also Compton*, 666 S.W.3d at 714 (error must be so serious it deprived defendant of a fair trial with reliable outcome). We overrule his alternative argument under Rule 404(b).

## CONCLUSION

The judgment is affirmed.

Luz Elena D. Chapa, Justice

DO NOT PUBLISH